STATE v. ALEXANDER McDANIEL.

*Slander of Women—Burden of Proof.*

On trial of an indictment for slander under the act of 1879, ch. 156, the admission of the defendant that he spoke the words charged does not shift the burden of proof upon him to show he had not slandered an innocent woman. Her innocence is a question for the jury upon the evidence, and no presumption of her innocence should be allowed to weigh against the defendant.

(*State* v. *Woodly*, 2 Jones, 276; *State* v. *Evans*, 5 Jones, 250, approved, and *State* v. *Morrison*, 3 Dev. 299, commented on.)

INDICTMENT for slander tried at Fall Term, 1880, of JONES Superior Court, before *Gudger, J.*

Verdict of guilty, judgment, appeal by defendant.

*Attorney General,* for the State.

*Messrs. Manly, Simmons, & Manly,* for defendant.

RUFFIN, J.  The defendant was indicted, under the act of 1879, ch. 156, for slandering  Laura  Whaley, *an innocent woman,* by speaking words concerning her, which amounted to a charge of incontinency; and on the trial in the superior court he admitted having spoken the words charged, and insisted that the same were true.  The prosecutrix was introduced as a witness for the state, and declared that she was innocent of the misconduct imputed to her, not only so far as the defendant was concerned, but all other men; and other evidence was given as to her good character.  The defendant offered evidence which tended to support the words spoken concerning her.

The judge then charged the jury that in order to convict the defendant, they must find that the prosecutrix was *an innocent woman,* that is to say, a  pure, chaste woman; and that the general rule of law was that all persons are presumed to be innocent until the contrary is shown; so that the defendant having admitted that he used the words which amounted to a charge of incontinency, or if the state had proved the use of such words by the defendant, the burden of proof was upon him *to show that he had not slandered an innocent woman.*  The defendant complains of this charge because he says, it shifted the burden of proof from the state to himself, and withal required him to prove a negative.

The statute under which the defendant is indicted, is in these words:  "Any person who may attempt in a wanton and malicious manner to destroy the reputation of an innocent woman by words written or spoken which amount to a charge of incontinency, shall be guilty," &c.  As we construe it, the offence defined consists, not in the slander of a woman by falsely charging her with incontinency, but in the *attempt to destroy the reputation of an innocent woman* by

such means; and by an "innocent woman" is meant a pure woman—one whose *character*, to use the language of the preamble of the statute, is "*unsullied.*"

The innocency then of the woman who is the subject of the attempt, lies at the very foundation of the offence, and constitutes its most essential element—its very *sine qua non*, and must of necessity be distinctly averred in the indictment.

If necessary to be averred, then, under the principle declared in the cases of the *State* v. *Woodly*, 2 Jones 276, and the *State* v. *Evans*, 5 Jones, 250, the burden of proof devolved upon the state even though it involved the necessity of its proving a negative.

It is true that in the case of the *State* v. *Morrison*, 3 Dev., 299, an exception to the general rule which requires the state to prove every material averment against the defendant, was admitted by this court; but it is perfectly manifest from what is said in the two cases just cited, that it soon became dissatisfied with that decision and took such great pains to limit and restrict it as virtually amounted to overruling it.

His Honor below by his instruction to the jury that "in order to convict the defendant they must find that the prosecutrix was an innocent woman," seemed to have recognized the general rule as a true one; but the error complained of by defendant is that he further charged them that because of the rule of law by which all persons are *presumed* to be innocent until the contrary is shown, they were to infer her innocence without any proof being offered to establish it; and that this presumption of law in her favor lasted until the defendant proved the contrary; and this seems to us to be a well founded exception to the charge.

We take it that no effect should be given to the admission by the defendant of his having spoken the words charged beyond that which ought to have been given to convincing

proof of his having spoken them. So that the question is to be considered exactly as if the state had closed its case immediately upon making proof of the words spoken and nothing more.

Now while it may be that the law does raise a presumption in favor of the integrity of the conduct of men generally, which each individual may call to his aid when necessary for his protection, still we are not aware that it ever allows the weight of that presumption to be thrown into the scales against a defendant on trial. Indeed, how could it do so without raising conflicting presumptions which must necessarily destroy one another or else fail to do even and exact justice to all? Why should the law presume the prosecutrix in this case to be innocent of a delinquency in morals, if thereby it should raise another presumption that the defendant was guilty of a *crime* which subjected him to punishment? In a case like this the law raises but a single presumption—the same which it raises for every defendant on his trial for a criminal violation of the law of his country, of holding him to be innocent until *proved* to be guilty ; and to this presumption there is no limit, but it goes to the whole scope of the charge against him and embraces every averment necessary to constitute the alleged offence.

This presumption in favor of defendants on trial is too important, and has been found too useful in the protection of innocence to be sacrificed to a mere sentiment; nor indeed is it seen that there is any necessity for so doing in order to secure the protection of the statute for all such females as it was intended to protect. Every woman, when traduced, is a competent witness for the state against her traducer, and if her life has been pure, she will find no difficulty in getting the juries of the country to listen to her protestations of her innocency. And when added to this, is the privilege of calling in her sympathizing neighbors to speak to her

good general character, she needs not that any further concession should be made to her which might be inconsistent with the safety of an innocent defendant.

We think, therefore, His Honor below erred in holding that the law raised any presumption as to the innocence of the prosecutrix, but that he should have submitted that question to the jury to be determined by them upon the evidence as any other question of fact would be, and that the verdict and judgment should be set aside and a *venire de novo* awarded the defendant.

Error.                                                    *Venire de novo.*