THE STATE v. P. D. GRIGG.

*Slander—" Innocent Woman"—Evidence.*

1. The term "innocent woman," employed in the statute (*The Code*, §1113) making it a misdemeanor to attempt to destroy the reputation of virtuous women by false declarations in respect to their chastity, means a woman who, at the time the alleged slanderous charge was made, and at the time of the trial therefor, was chaste and virtuous.

2. The fact that such woman at some former period in her life had departed from the path of virtue, while admissible in evidence on the question of her character at the trial, will not *per se* entitle a defendant, indicted under the statute, to an acquittal; on the contrary, if the prosecutrix has satisfied the jury that she has reformed and led an exemplary life, she is entitled to the protection of the law.

3. *State* v. *Davis*, 92 N. C., 764, commented upon and explained.

This is a CRIMINAL ACTION for slander, tried at October Term, 1889, of the CLEVELAND Superior Court, *Connor, J.*, presiding.

There was evidence tending to prove the utterance of the slanderous words and that they were false.

Mrs. Mattie C. Cline, the prosecutrix, testified that she had been married twelve years, and that no person other than her husband had ever had carnal intercourse with her; that her first child was born six months after her marriage, and that her husband was the father of it; that she had carnal intercourse with her husband before their marriage and during their engagement; that she had never had such intercourse with Caleb Peeler or any other man, except her husband.

David G. Cline, the husband of the prosecutrix, testified that he had had intercourse with his wife repeatedly six months before and up to the time of his marriage; that he was the father of her child; that he was engaged to be married to her for three years.

Several witnesses testified that, although the facts with reference to the birth of her first child were known, the general character of the prosecutrix for virtue, truth and honesty was good.

The defendant did not introduce any testimony, and requested the Court to charge the jury that they should return a verdict of not guilty, for that, upon the testimony of Mrs. Cline and her husband, the prosecutrix was not an "innocent woman" within the meaning of the statute.

The Court declined to so instruct the jury, and charged them that if they were fully satisfied that the prosecutrix had never had sexual intercourse with any person other than her husband, and that she had, with the exception of what occurred between her husband and herself before marriage, been a virtuous woman, she was an innocent woman within the meaning of the statute.

There was a verdict of guilty, and from the judgment thereon the defendant appealed.

*The Attorney General*, for the State.
*Mr. R. McBrayer*, for the defendant.

CLARK, J.: Slander was formerly cognizable only on the civil side of the docket by an action for damages. The law under which the defendant is indicted is one of many recent statutes making indictable acts which were previously punishable civilly only. These statutes, it is generally understood, have been passed in consequence of the decision in *Dellinger* v. *Tweed*, 66 N. C., 206, in which it was held (by a divided Court, PEARSON, C. J., and RODMAN, J., dissenting), that the homestead and personal property exemptions were valid against *torts*.

In the absence of the civil remedy for private wrongs thus taken away, statutes became necessary to make them indictable as if public wrongs. In construing the statute, we are left entirely to the precedents in our own Reports, as we believe no act of the like tenor has been adopted in any other State.

The statute (*The Code*, § 1113) under which the indictment is brought, was originally adopted in 1879 (ch. 156), and to it was prefixed the same preamble as that to the act of 1808 (now *The Code*, § 3763), which made the same language *actionable*. The similarity of the two statutes, and the identity of the evil to be remedied, would seem to indicate an intention to give the woman aggrieved a remedy by indictment, whenever she could have sustained an action for damages. We think, therefore, the more accurate and just definition of the words "innocent woman," is that given by ASHE, J., in *State* v. *Aldridge*, 86 N. C., 680, in which he defines the meaning to be a "chaste and virtuous woman."

If the evidence is sufficient to satisfy the jury, beyond a reasonable doubt, that at the time the words were spoken, and at the time of the trial, the prosecutrix was a chaste and virtuous woman, exemplary as to virtue in life and conduct, and that the defendant, in a wanton and malicious manner, by false charges of incontinency, attempted to destroy her reputation, she is entitled to the protection intended to be given by this law.  Evidence offered to show a slip from virtue, at some former period, by a woman who has since been altogether exemplary, would be competent, as tending to shake the testimony of her subsequent good character.  In *State* v. *Davis*, 92 N. C., 764, the Court affirmed, for the first time, a charge of the Judge below, in which he defined an "innocent woman" to be one "who had never had actual illicit sexual intercourse with any man."  In doing so, the Court intimates strongly that this rule was too stringent for the prosecutrix, but says, "*the defendant has no cause to complain*"—that is, that while a woman who had never had illicit sexual intercourse with any man is an innocent woman, still, one who has had such intercourse, but who has repented thereof and become exemplary, chaste and virtuous, might also be an "innocent woman" within the meaning of the statute.  The definition of an "innocent woman" given in *State* v. *Davis*, has been approved since in *State* v. *Brown*, 100 N. C., 519, and *State* v. *Hinson*, 103 N. C., 374, but in both instances the objection to that definition came from the defendant.  All three cases are, therefore, simply authority that no conduct less than actual illicit sexual intercourse will deprive a woman of being an "innocent woman" within the meaning of the statute.  Equally with *State* v. *Davis* do the two supporting cases leave open the question, whether a woman who falls short of that rule, by having at some time had such intercourse, but who comes within the definition of an "innocent woman" laid

down in *State* v. *Aldridge, supra, i. e.,* a " chaste and virtuous woman " is entitled to the protection of law against attempts to destroy her reputation by false imputations of unchastity, wantonly and maliciously made. .

We assent to the strong intimation given in *State* v. *Davis, supra,* and do not think it was meant " to exclude from the protection of the law every woman who has, at some time of her life, made *a slip in her virtue.* Every man, in the course of his life, must have had instances brought to his knowledge of unfortunate females who have, at some period of their lives, been led from the path of virtue by the wiles of a seducer, who have afterwards reformed, and, by a course of exemplary conduct, established for themselves a character for chastity above all reproach. Shall it be said that these unfortunates are not to be allowed a *locus penitentiæ,* and are to be subject forever to the vile tongue of the maligner and slanderer? "

His Honor's charge, in this case, presents this point for decision for the first time. As given, it was not in conflict with any precedent in this Court, and we think he was correct in instructing the jury, that if the prosecutrix had been a virtuous woman since the illicit intercourse, prior to her marriage, with one who has since become her husband, she was an " innocent woman" within the purview of the statute, and not subject to have her peace and reputation destroyed with impunity by false charges, if wantonly and maliciously made, of present unchastity.

Affirmed.