## STATE v. L. A. CROWELL.

*Indictment for Seduction Under Promise of Marriage—Deceit—Statute of Limitations—Instructions—Sentence.*

1. Deceit being the very essence of the offence, the statute (Section 1177 of *The Code*) exempting certain crimes, including deceit, from the two years statute of limitations, applies to the offence of seduction under promise of marriage.

2. Although, where there is a request that the charge of the trial Judge shall be put in writing, the entire charge must be written, yet this rule does not forbid any and all oral expressions from the presiding Judge. Hence, where by an expression to the jury the defendant, in the trial of an indictment, got the benefit of a prayer for instructions, the defendant cannot complain that it was not put in writing.

3. A "virtuous woman," within the meaning of the statute, is one "who has never had illicit intercourse and who is chaste and pure", and it was not error in the trial of a defendant charged with seduction under promise of marriage to refuse to add to such definition the words "and she must have a mind free from lustful and lascivious desires."

4. Ch. 248, Acts of 1885, providing that one convicted of seduction under promise of marriage "shall be fined or imprisoned," at the discretion of the Court, does not authorize the imposition of both fine and imprisonment.

4. The fact that a sentence both of fine and imprisonment was imposed, when only one was authorized, does not entitle defendant to a new trial, but the case will be remanded for proper sentence.

INDICTMENT for seduction of an innocent and virtuous woman, under promise of marriage, found at Spring Term, 1895, of CATAWBA Superior Court, before *Timberlake, J.,* and a jury.

Miss Etta Propst, the prosecutrix testified : "I am twenty-two years old; have lived always in Catawba County. First met defendant when I was about twelve years old. He was living in Lincoln County, about one and a half miles from where I lived. I was an innocent woman up to the time I became intimate with defendant. We were engaged to be married ; engagement was made when I was sixteen years old. He paid attention to me as a friend with all respect he could ; made evening calls ; went out riding ; to my sister's reception and to his own house ; he brought his sisters to see me often ; he took me to his house once or twice ; took me to sociables ; to Mr. Dellinger's and

Mr. Reinhardt's; paid attention to me at church and respected me with all respect he could. It was in June or July when engagement took place; I have one child; Dr. Crowell is its father; it was about one year before birth of child that I became engaged to defendant; child will be five years old next May; up to time of said engagement I was an innocent woman; it was a year after engagement before I had sexual intercourse with him; at this time he was living at his own home; about one year after sexual intercourse before child was born; first had sexual intercourse with him in my father's parlor. He lived in Lincoln County from engagement to birth of child. He was away part of the time in Baltimore. I told him he ought to fulfill his promise; he told me some time in the future would be better; don't know how often I told him; he put me off several times in that way. Defendant wrote me several letters—(letters are shown her which she identifies as his handwriting). His faithful promise to marry me and his persuasions made me yield; I begged him not to ask it; I cried to him not to ask it. (Child is here shown her which she says is hers.) I had another admirer besides him and he asked me to make him quit; asked me if I would rather marry him to stop other fellows, which I did."

Cross-examined.—As near as I can recollect it was about one year before sexual intercourse that we became engaged. He asked me to stop Gus. Shuford if I would rather marry him, and I stopped him; something else was said about marriage; he gave me his right hand and promised if anything happened at time of first connection he would marry me immediately. He went away in September to attend lectures; this intercourse had continued a month or so; it was first of July, 1889; he had connection with me from the first time till he left more than once; he came home in March; child was born in May, 1890; suppose it was July,

1888, when I became engaged to him; don't think I told my father; have no mother or step-mother; I told my sister soon after we became engaged; I didn't find out my condition till after he went to lectures; I asked him to fulfill his promise as soon as I saw him; he said it was not a suitable time; I mentioned it to him as often as I saw him; he came often before and afterwards; can't recollect number of times I mentioned it to him; he said about the same thing every time—that it would be better in future; he told me not to tell anybody; said his folks were against it; I told my father of my engagement before and after pregnancy; I could not get heart up to tell him and sister told him; I told him it was under promise of marriage; can't say how long before birth of child before I told him. We had right smart of company; it was not customary to put light out; it was not frequently done—it might have been done sometimes; I was in sitting-room with light out with no one else but him; it was not a frequent occurrence for young men to put lights out; I have with him put light out a time or two; no one else was in there when lights were out as I recollect; it was before he had connection with me that he told me if anything happened he would marry me."

Letters from the defendant to prosecutrix written after the pregnancy and tending to show a promise of marriage admitting the paternity of the child, were read in evidence under objection by the defendant.

There was evidence corroborative of the testimony of the prosecutrix as to the attentions paid to her by the defendant from the time she was 12 years of age up to the time of her pregnancy during which time he attended her in public at parties and receptions and, on occasions, carried her to the house of his father, where his sisters lived, and other friends, good and respectable people.

One witness, sister of prosecutrix, testified that shortly

after the birth of the child, when asked why he did not carry out his promise of marriage, defendant did not deny that he had made a promise but said that he was not then financially able to marry.

The defendant testified in his own behalf admitting the illicit intercourse with prosecutrix (which he alleged begun in January, 1889, instead of July, 1889) but denied that the seduction was under promise of marriage, and stated that he had at no time before the illicit intercourse promised to marry her.

Among other instructions prayed for by the defendant and refused by the Court was the following:

"The State must satisfy you beyond a reasonable doubt, by her own and by independent corroborating evidence, that the prosecutrix prior to the alleged seduction was of a virtuous and pure mind and heart; that is, a mind free from lustful and lascivious desires and, unless you are so convinced, you will acquit the defendant."

There was a verdict of guilty and the Court adjudged that the defendant pay a fine of $5,000 and be imprisoned in the State penitentiary for five years. Defendant appealed.

*The Attorney General*, for State.

*Messrs. Jones & Tillett* and *D. W. Robinson*, for defendant (appellant).

CLARK, J.: *The Code*, Section 1177, excepts from the two years statute of limitation, perjury, forgery, malicious misdemeanors and deceit. There has never been such an indictable offence as "deceit" but the meaning of this section has always been that misdemeanors, the gist of which was malice or deceit, are within the exception. In *State* v. *Christianbury*, 44 N. C., 46, it was held that there being no such offence as "deceit" it would apply to "cheating by

*false token" of which deceit was the gist but would not include "conspiracy to cheat" "the gist of which offence is the conspiracy and the cheating but an aggravation." That decision did not restrict deceit to "cheating by false token," but instanced that as an offence coming within the general description of misdemeanors by deceit. The statute against seduction under promise of marriage (Acts 1885, Ch. 248) had not then been enacted. In *State v. Horton*, 100 N. C., 443, 449, SMITH, C. J., says, that this statute "plainly contemplates a seduction, brought about by means of a promise of marriage, in the nature of deceit." Indeed deceit is the very essence of this offence, the warp and woof of it, so to speak. There is more warrant for so holding it than the Court had for placing cheating by false token under that head, for this offence is perpetrated solely by reason of the trust and confidence placed in the perpetrator by the woman in consequence of the intimate relation existing between them and relying on the promise of marriage by means of which he procures the indulgence of his desires. In cheating by false token there is not this dependence and breach of confidence and trust.

The Attorney General properly conceded that this crime would not have come under the other exception in this section "offences committed in a secret manner." That clearly applies to crimes committed in such manner that the offender is unknown to the person injured.

The Act of 1891, Ch. 205, defining felonies and misdemeanors, makes this offence, if committed since the act, a felony as to which there is no statute of limitation. But that act does not apply to this offence which was committed prior to its enactment.

When there is a prayer to put the charge in writing the entire charge must be written. *State v. Young*, 111 N. C., 715; but as was said by SMITH, C. J., in *Currie v. Clark*,

116—67

90 N. C., 355, 361, "it is not the policy or purpose of the' statute, nor does the language bear such rigorous construction as to forbid any and all oral expressions from the presiding judge. This would be to subordinate substance to form and subserve no useful purpose." The defendant prayed the Court to instruct the jury that the offence was barred by the statute of limitations. This the Court declined but orally told the jury instead, "the statute of limitations has nothing whatever to do with this action and you will not take it into consideration." The defendant has the full benefit of the exception that the prayer was refused and has not cause to complain that the judge did not write down the incidental oral remark.

Nor was there error in refusing to give the definition of an innocent and virtuous woman asked by the defendant. The law looks at conduct, and motive only as shown by conduct, and not at thoughts undisclosed and natural impulses not acted on. The precedents sustain the definition given by the Court that an innocent and virtuous woman is one "who has never had illicit intercourse with any man and who is chaste and pure." *State* v. *Ferguson*, 107 N. C., 841. The Court properly refused to go farther and charge that the prosecutrix must have had "a mind free from lustful and lascivious desires."

The Court erred, however, in imposing both fine and imprisonment. The Act (1885, Ch. 248) provides that the defendant upon conviction of this offence "shall be fined *or* imprisoned at the discretion of the Court and may be imprisoned in the penitentiary not exceeding five years." The disjunctive "or" cannot be construed "and" in a criminal statute when the effect is to aggravate the offence or increase the punishment. *State* v. *Walters*, 97 N. C., 489. The latter part of the clause "and may be imprisoned in the penitentiary," &c., means "and if the alternative of impris-

onment is selected by the Judge, the imprisonment in his discretion may be in the penitentiary, not exceeding five years.

This, however, does not entitle the defendant to a new trial but the case will be remanded that sentence may be imposed at the next term of Catawba Superior Court in conformity to this opinion.    State v. Walters, supra; State v. Lawrence, 81 N. C., 522; State v. Queen, 91 N. C., 659. The verdict stands.    His Honor holding the Court below will in the exercise of his discretion, within the limits allowed by law, impose either fine or imprisonment.

Error.    Remanded.