STATE v. STARKIE FULCHER.

(Filed 23 October, 1918.)

1. **Seduction—Promise of Marriage—Evidence—Supporting—Good Character—Virtue—Statutes.**

On the trial of an indictment for seduction under promise of marriage, the innocence and virtue of the prosecutrix, as testified to by her, may be sufficiently supported by evidence of her previous good character.

2. **Seduction— Promise of Marriage— Sexual Act— Paternity — Evidence— Statutes.**

Where there is evidence that the defendant, indicted for seduction under promise of marriage, had frequently and almost exclusively gone with the prosecutrix at and before the time of conception, had admitted an engage-

ment of marriage to her mother, and had refused a request to visit her when the consequences had developed, together with the birth of the child, it is sufficiently supporting, under the statute, of her direct testimony of the sexual act and the paternity of the child for the determination of the jury.

3. Seduction—Promise of Marriage—Promise—Evidence—Statute.

Upon the trial for seduction under promise of marriage, testimony that the defendant admitted to others the promise of marriage; that he paid assiduous and almost exclusive attention to the prosecutrix at the time she alleges the act was committed by them, with the other relevant circumstances of this case, is held sufficient, under the statute, as supporting evidence of her direct testimony that he had promised to marry her and that she had thereby been persuaded to yield to him.

4. Seduction—Promise of Marriage—Time of Promise—Evidence—Instructions.

The promise to support an indictment for seduction, under the statute, must have preceded the illicit intercourse, and in this case it is Held that the judge's charge, under the evidence, properly so confined it.

5. Seduction—Promise of Marriage—Corroborative Evidence.

Testimony of the mother as to what the prosecutrix said of the defendant's promise of marriage is corroborative evidence in an action for seduction, under the statute, though not supporting in the proper sense of the word.

INDICTMENT tried before *Daniels, J.,* and a jury, at June Term, 1918, of VANCE.

Defendant was indicted for the seduction of Myrtle West under promise of marriage. She testified that the defendant, in July, 1917, had promised to marry her; that he had visited her frequently since the April before, and was accepted as her lover, and that in consequence of his promise to marry her she had yielded to his embraces and had committed the sexual act with him several times. She did so every time he came to see her, because he had often professed love for her, and she loved him, and especially because of his promise to marry her. He had not only promised to marry her, but "swore" that he had procured a license for the purpose, and thereby persuaded her to submit to his solicitation.

There was ample evidence of her good character prior to the time she yielded to him, and she testified that "she had never had sexual intercourse with any other man than Starkie Fulcher." The doctor told Mrs. West, her mother, of her pregnancy just before the birth of her child, which was in March, 1918. In the summer of 1917, and in September and October of the same year, she told her mother that Fulcher was "talking love to her" and had promised to marry her in October, 1917, but they were not married. The prosecutrix further testified: "I am 17

years old and have known the defendant since the last Sunday in March, 1917, when he came to see me with his brother. He began coming to see me right off, and was soon coming one, two, and three times a week, going with me to church and about the neighborhood. He began talking love to me in April, the second or third time he came, and kept this up until September; said he loved me better than any one in the world. I had baby last March. Defendant was the father. It died soon after. The reason I let him have to do with me was, he told me he loved me. I thought he loved me, and I loved him. I thought he would do what he said. I never yielded till he told me he had the license to marry me. He said he would marry me, and had got license and given it to Mr. Walters. He appointed second Sunday in October for the marriage, and then Christmas. He told mother he had promised to marry me, and she bought clothes for it." She was corroborated by her mother and father as to buying the clothes for her, and by her father as to the frequent visits of defendant to her in 1917. Her father testified that other men came to see her—the Curries, Parrish, Abbott, and others; and it also was in evidence that one Will Thompson came to see her, and that her father ordered him from the house when he found him with her one night. He ran out so hurriedly that he left his cap behind, and never came back for it. The night Dr. Gill was there, the defendant was sent for, but did not come to the house. There was other evidence, *pro* and *con,* which need not be stated.

Defendant was convicted, and appealed from the judgment.

*Attorney-General Manning and Assistant Attorney-General Nash for the State.*
*J. C. Kittrell and Thomas M. Pittman for defendant.*

WALKER, J., after stating the case: The defendant's motion to nonsuit was properly overruled, as there was evidence for the jury as to the innocence and virtue of the woman, as to the seduction, and as to the promise inducing it.

1. As to her innocence and virtue, the evidence of her uniformly good character before her fall was properly received, according to our precedents, as some evidence supporting her direct and positive testimony that she committed her first sexual act with the defendant and "had never had sexual intercourse with any other man." Taking all of the evidence into consideration, both positive and circumstantial, as to her virtue and innocence, we hold it to be sufficient. *S. v. Horton,* 100 N. C., 443; *S. v. Mallonee,* 154 N. C., 200; *S. v. Pace,* 159 N. C., 462; *S. v. Cline,* 170 N. C., 751.

2. As to the sexual act. Her testimony was sustained by the birth of

the child, and, as to the identity of her betrayer, by his frequent visits to her home, and especially at the time of the conception, and his general conduct and demeanor towards her, his admission to her mother of their engagement to be married, and his refusal to answer the invitation to her home when he was asked to come. It may be fairly and reasonably inferred that, when a man is with the prosecutrix so frequently as this defendant was, to the exclusion of others, if one phase of the evidence be true, he was the author of her ruin. It is a matter for the jury. They must find the fact whether he was there at the time, and in order to do so, they may consider all of the circumstances and surroundings, if there is any evidence of a supporting character, as there is in this case. _S. v. Mallonee, supra; S. v. Moody,_ 172 N. C., 967.

3. As to the seduction by reason of the promise, the defendant admitted the engagement to other witnesses, and his assiduous attentions to the girl at the time when she alleged they committed the act, with other circumstances already related, tended to support her testimony that he had promised to marry her, and she was thereby persuaded, after hesitation, to yield to his wishes. The woman could not easily be supported in any other way, for the man is not apt to admit his own guilt, though there are witnesses of it. _S. v. Pace, supra; S. v. Shirley,_ 141 N. C., 823; _S. v. Kincaid,_ 142 N. C., 657; _S. v. Moody,_ 172 N. C., 967.

It is said in Underhill on Cr. Evidence, sec. 388: "The conduct and relations of the parties after, as well as before, the date of the alleged seduction may be shown, such evidence being relevant to prove that consent was obtained by promise and inducements, and of what they consisted." This is cited with approval in _S. v. Moody,_ 172 N. C., at 971, where we also said, quoting from the courts of other States having similar statutes: "In _S. v. Curran,_ 51 Iowa, 112, 118, the Court, referring to this question, held: 'The evidence relied upon as corroborative is that the defendant was the prosecutrix's suitor through a long period of time. Such fact, considered independently, would be entirely consistent with the defendant's innocence. He claims, therefore, that it does not tend to connect him with the offense. In our opinion, the position is not well taken.' In _Stevenson v. Belknap,_ 6 Iowa, 97 (103), the Court said: 'We believe that all authorities concur that seduction is generally made out by a train of circumstances, among which may be enumerated courtship, or continued attention for a length of time.' See, also, _S. v. Wells,_ 48 Iowa, 671. Courtship affords not simply the opportunity, but the very means of persuasion by which seduction is effected. The testimony of the prosecutrix is competent though not sufficient evidence that the defendant was her seducer. The fact that he was her suitor, proven otherwise than by her own testimony, tends to make credible her testimony that her proven seduction was effected by him. The corrobora-

tion, while by no means conclusive, must impress every one who has any knowledge of human nature as exceedingly cogent.' (See, also, McClean Cr. Law, sec. 1119). But evidence of this character should not be considered as supporting unless the relations and the conduct and demeanor of the parties toward each other are such as to indicate that the man is the accepted lover of the woman, and the jury must find the fact whether upon such evidence as supporting that of the prosecutrix the promise of marriage was given and induced the seduction." The Court said, in *S. v. Timmons,* 4 Minn., 241, 247: "It cannot be intended that by being corroborated the statute means that there shall be proof of these facts sufficient in itself to establish them independently of the testimony of the girl, as that would render the statute practically null. Parties seldom seek publicity in such matters. From their nature they transpire in secret, and it is only by accident that any positive proof can ever be brought to bear upon them, except through the parties themselves. The corroboration, therefore, intended by the statute is proof of those circumstances which usually form the concomitants of the main fact sought to be established, which circumstances should be sufficiently strong in themselves and pertinent in their bearing upon the case, to satisfy the jury of the truthfulness of the witness in her testimony on the principal facts." It is held in *S. v. Reinheimer,* 109 Iowa, 624, that in a prosecution for seduction the fact that the parties kept company and acted as lovers usually do, and other like circumstances, are sufficient confirmation and support of the evidence of the prosecutrix required by the statute. With reference to facts somewhat similar to those in this case, the Court said, in *S. v. Hill,* 91 Mo., 423: "The prosecuting witness swears positively to a marriage promise made by defendant on the night they were in the kitchen; and we think the foregoing evidence is sufficient by way of corroborating circumstances. It is true, the visits of defendant were not frequent, and this evidence may all be true, and there have been no promise made to marry the girl, but the circumstances are such as usually attend such engagements. Whether they and the testimony of the prosecuting witness outweighed the positive denial of the defendant was a question for the jury to determine." And in *S. v. Whatley,* 144 Ala., 68: "It was proper to permit the State to show how long the defendant kept company with the witness. He was charged with having seduced her upon a promise of marriage, and their relationship and conduct toward each other was a proper element for the consideration of the jury." But the case of *Armstrong v. People,* 70 N. Y., 38, 44, bears more directly and fully on this question we are discussing, and there the Court held: "It is settled by the authorities already cited by the Court that the supporting evidence need be such only as the character of these matters admits of being furnished. The promise of marriage is not an agreement usually

made in the presence or with the knowledge of third persons. Hence the supporting evidence possible in most cases is the subsequent admission or declaration of the party making it, or the circumstances which usually accompany the existence of an engagement of marriage, such as exclusive attention to the female on the part of the male, the seeking and keeping her society in preference to that of others of her sex, and all those facts of behavior towards her which before parties to an action were admitted as witnesses in it were given to a jury as proper matter for their consideration on that issue. So, too, the act of illicit connection, and the immediate persuasions and inducements which led to compliance, may not be proved by the evidence of third persons directly to that fact. They are to be inferred from the facts; that the man had the opportunities, more or less frequent and continued, of making the advances and the propositions, and that the relation of the parties were such as that there was likely to be that confidence on the part of the woman in the asseverations of devotion on the part of the man, and that affection toward him personally which would overcome the reluctance on her part, so long instilled as to have become natural to surrender her chastity. Circumstances of this kind vary in weight in different cases, and it is for the jury to determine their strength. But when proof is made of the existence of them, in some degree, it cannot be said that there is no supporting evidence. A court cannot then properly direct a verdict or discharge the defendant in the indictment, on the ground that no case is made for the consideration of the jury." These cases were cited in *S. v. Moody, supra,* and others will be found there which held the same way, and the case itself (*S. v. Moody*) is an authority in support of our views.

The defendant contends that the supporting testimony should relate to a time preceding the illicit intercourse. We think that this position, and others taken by the defendant, so far as they are correct in law, are fully covered by the charge of the court, which was as follows: "It is in evidence that the prosecuting witness told her mother in October that she would be married to defendant on the second Sunday in October, and this may be considered as corroborative testimony, but not as supporting testimony, upon the question of the promise of marriage at the time of the alleged intercourse. There is testimony that the defendant continuously, from April through the summer and fall, visited the prosecutrix one, two, and three times a week; went with her to church and Sunday school, visited with her in the neighborhood, and that no other young man was keeping her company during that time. If you believe the testimony you may consider it as supporting testimony of the existence of the promise of marriage at the time of the alleged intercourse." The judge was not bound to adopt the language of the requests for instruc-

tions, but might use his own, provided it did not change the sense or weaken their force. *Marcom v. R. R.,* 165 N. C., 25.

What the prosecutrix said to her mother in regard to the promise of marriage was corroborative evidence, though not supporting in the proper sense of the word. *S. v. Cline,* supra and cases cited.

We are of the opinion that there is sufficient supporting testimony, though it may not be very strong or of any great probative force. It may even be characterized as slight or weak, but it is sufficient for the jury, being more than a mere scintilla.

We do not find, upon careful examination, that the record discloses any substantial error in the trial of the case.

No error.