## STATE v. SMITH JOHNSON.

(Filed 7 December, 1921.)

**1. Seduction—Breach of Promise of Marriage—Fault of the Woman—Statutes—Innocence and Virtue.**

In order to convict of crime of seduction under a breach of promise of marriage, the woman should have previously been both innocent and virtuous, and should she have committed the act of adultery induced by her own lascivious desire, with or without the promise, her conduct is not such as to bring her within the intent and meaning of the statute as an innocent and virtuous woman. C. S., 4339.

**2. Same—Instructions—Appeal and Error.**

Where there is evidence upon the trial for seduction under breach of promise of marriage that the woman had consented to the act, induced solely by her own lascivious desire, irrespective of the promise to which she has testified, the jury may disregard her testimony as to the promise, and render a verdict acquitting the defendant of the charge; and a requested instruction is erroneously refused which leaves out the element of seduction and bases the defendant's innocence or guilt on the finding as to whether the woman had been solely induced by her own desire. C. S., 4339.

**3. Same—Subsequent Chastity.**

Upon the trial for seduction under a breach of promise of marriage, there was evidence that the woman, a widow, had had sexual intercourse with her husband before her marriage, which had also been induced under promise thereof: *Held*, the woman does not come within the intent and meaning of the statute as having been "innocent and virtuous"; though however often she may have committed the act with her husband before the marriage, yet had she remained faithful to him thereafter, and had not had sexual intercourse with any other man until that with the defendant, it would render the defendant guilty under the provisions of the statute if he had violated them. C. S., 4339.

APPEAL by defendant from *Ferguson, J.,* at August Term, 1921, of WILKES.

This was an indictment for seduction under promise of marriage.

There was evidence tending to show that the prosecutrix, Darrie Ball, before the seduction, charged in this case, had been seduced under promise of marriage by Thomas Ball. This she admitted. Ball afterwards married her, and they lived together as man and wife, but he did not marry her until she gave birth to a child, of which he was the father, she being at that time about sixteen years of age. She had been married to Ball about fourteen years, when he died, in January, 1916. She had five children by him, including the one not born in wedlock. She was thirty years old when Ball died, and the defendant was twenty-one at that time. There was some evidence that he had never had anything to

do with a woman in his life, and at the time of the death of prosecutrix's husband, the defendant was going to see a young girl just across the mountain beyond the home of the prosecutrix. The defendant prior to the death of prosecutrix's husband, and afterwards until about one year ago, lived within sight and within less than one-half mile of her home.

There was evidence tending to show that the prosecutrix was seduced by the defendant under a promise of marriage, and, slight though it may have been, it was sufficient to be submitted to the jury. She confessed to the jury that she submitted to the defendant "partly because she loved him and partly because she knew that it would be good to her." There was considerable testimony, which was, more or less, to the same effect. There also was further testimony, in defendant's behalf, tending to show that soon after the death of the husband and prior to July, 1916, prosecutrix began meeting the defendant along the road near the home of defendant and would walk with him and tease him about the girls and invite him to come and see her. As defendant would pass the home of prosecutrix's brother going to see his girl across the mountain, she would be there and her brother would hitch his ox to the wagon and drive the defendant to see his girl and the prosecutrix would go along, and come back in the same wagon, and leave defendant at the home of his girl. Later they would carry him in the wagon to visit their homes. Sometime during the month of July, 1916, at the invitation of the prosecutrix, the defendant went to her home and they sat around the fireplace, until the children went to bed. After they sat there for a while, the prosecutrix moved her chair over close to defendant, put her arms around his neck and said, "I have been loving you for a good while and you did not find it out until a few days ago." She hugged and kissed him, and put her hands upon him in such a way as to excite his sexual passions. At this he asked her to have intercourse with him, she consented, and they had intercourse there in a chair. After the intercourse, they talked about the girl the defendant was going to see and she asked defendant when he and the girl were going to marry, after which defendant went home. Nothing was said about their marrying. Defendant went to see prosecutrix often afterwards and often had sexual intercourse with her up to sometime before the baby was born on 16 July, 1918. Defendant and prosecutrix had said nothing about marrying, until defendant was drafted into the United States Army for service over-seas, and after the child was born and prior to 21 July, 1918, when defendant left for the camps. At this time defendant went to see prosecutrix, she cried and complained to him that she was not able to raise the baby and begged defendant to marry her. Defendant promised her then if she would keep a decent house and conduct herself properly, until he returned from the army, that he would marry her, and this is the promise he referred to

in the letters copied in the record. After defendant returned from the army he found that prosecutrix had not kept a clean house as she had promised to do, and prosecutrix asked him to try her again and she would keep the boys away. Defendant consented to do so, all of her promises she failed to keep, and all relations were broken off and the defendant married 5 December, 1920, and was arrested in this action in January, 1921.

The Court charged the jury, among other things, not related to this instruction, as follows: "If you find from the evidence beyond a reasonable doubt, that the prosecutrix never had sexual intercourse with any man except her husband and the defendant, and if you should further find from the evidence beyond a reasonable doubt, that she only had sexual intercourse with her husband before she was married after the engagement between her and her husband to be married, and it was at his solicitation after the said engagement and promise of marriage and before their marriage, and if you should further find from the evidence beyond a reasonable doubt, that the defendant and the prosecutrix were engaged to be married and that the defendant solicited her to have intercourse with him, promising to marry her, and she yielded to him because she trusted him and because he promised to marry her, she would be in the eyes of the law, an innocent and virtuous woman.

The court refused to give the following instruction requested by the defendant:

1. The court charges you that an innocent and virtuous woman under the law of this State, is a woman who had never had actual illicit sexual intercourse with any man. The court further charges you that if you should find from the testimony that the prosecutrix permitted her husband to have sexual intercourse with her prior to their marriage, then the court charges you that she would not be an innocent and virtuous woman and your verdict in this case, if you so find, will be "not guilty."

2. If you find from the testimony that the prosecutrix permitted her husband prior to their marriage to have sexual intercourse with her, that said sexual intercourse was illicit, notwithstanding you further find that the same was procured by seduction under promise of marriage, as the seduction under such a promise does not render sexual intercourse legal (except as between the prosecutrix and her husband) but to all the rest of the world it was illicit sexual intercourse, and the defendant would not be guilty.

Defendant duly excepted to the instruction given and to the refusal of those requested.

There was a verdict of guilty and from the judgment thereon, defendant appealed to this Court, after reserving his exceptions.

*Attorney-General Manning and Assistant Attorney-General Nash for the State.*

*J. A. Rousseau and Charles G. Gilreath for defendant.*

WALKER, J., after stating the case: The evidence in this case is not only repulsive, but filthy, in some of its parts, but we are to determine upon the legal guilt of the defendant or, in other words and speaking more accurately, whether he has been legally tried below. We do not think that he has been, and will proceed now to state our reasons for so thinking. The instruction above set forth contains a proposition of law which cannot be sustained and it no doubt caused the defendant's conviction. We know of no case in this State which decides that a woman would be innocent and virtuous under the facts and circumstances detailed by the judge therein. If a woman commits adultery with a man simply because she is solicited to do so, even upon the promise of marriage, she is to be pitied, but is not "innocent and virtuous" within the meaning of the statute upon which this prosecution is based. If she yielded to temptation solely because of the promise and not to gratify her lustful passions, she is still an adulteress, and cannot be said, in the language of this Court, to be a woman who never had had actual sexual intercourse with a man. She may be virtuous, but not innocent, within the meaning of the statute, as is shown so clearly by *Justice Davis* in *S. v. Ferguson*, 107 N. C., 841. It is said in that case, without quoting literally, that the woman must be virtuous, that is, pure and chaste, as well as innocent. The purpose of this statute is to protect innocent and virtuous women against wicked and designing men, who know that one of the most potent of all seductive arts is to win love and confidence by promising love and marriage. In section 1113 of The Code the word "innocent" is used, which *Justice Ruffin* defines, in *S. v. McDaniel*, 84 N. C., 805, as meaning "a pure-woman—one whose character, to use the language of the preamble of the statute, is unsullied." In *S. v. Davis*, 92 N. C., 764, "an innocent woman," within the meaning of that section, is defined to be "one who had never had actual illicit intercourse with a man," and mere lasciviousness, and the permission of liberties by men, are not contemplated by the statute; and this definition of the words. "an innocent woman," has been followed in *S. v. Horton*, 100 N. C., 447, in construing the word "innocent" in the statute now under review. But the woman must not only be "innocent" but "virtuous." What force, if any, does the word "virtuous" impart to the act? In *S. v. Grigg*, 104 N. C., 882, it is said, citing *S. v. Aldridge*, 86 N. C., 680, that a woman, who at some time in her life has made a "slip in her virtue" is entitled to the protection of section 1113 of The Code, if she is chaste and virtuous" when the slanderous words are uttered. There is a manifest reason why

the words "an innocent woman," in section 1113 of The Code, and "innocent and unprotected woman" in section 3763, should be construed to mean innocent of illicit sexual intercourse, as affecting her reputation when the slanderous words are spoken, for the purpose of these sections is to protect women, who, however imprudent they may have been in other respects, have not so far "stooped to folly" as to surrender their chastity and become incontinent, or who have regained their characters for innocence and chastity if a "slip has been made," from "the wanton and malicious slander" of persons who may attempt to destroy their reputations and blast and ruin their good names. But the act of 1885, recognizing the frailty of man as well as woman, superadds to the word "innocent" the word "virtuous," and before it will condemn and punish the man, who may be seducible as well as seductive, requires that it shall be made to appear that the woman was herself "innocent and virtuous," and that the seduction was compassed by winning her confidence and love under the false and alluring means of a promise of marriage; but, if she willingly surrenders her chastity, prompted by her own lustful passions, or any other motive than that produced by a promise of marriage, she is in *pari delicto,* and there is no crime under the statute. She must not only be innocent, but virtuous, that is, chaste and pure, and if such a woman yields under the promise of marriage to the "studied, sly, ensnaring art . . . dissembling smooth" of the seducer and is betrayed, she deserves sympathy and charity; and he not only deserves the "curse" of all who love honor and virtue, but the severest penalties of the law. The woman, however, must be "virtuous" as well as "innocent," and this implies something more in her conduct than mere innocence of illicit sexual intercourse. If she willingly submitted to his embraces, the mere promise of marriage would not make it seduction. 33 Mich., 117. And her evidence must be supported. No such proviso is to be found in sections 1113 and 3763. For illustration, there is no evidence that Potipher's wife ever had illicit sexual intercourse with anyone, and yet the idea of a "virtuous woman" would hardly be suggested by her name.

This definition of the words has been the settled and fully accepted one ever since the decision in *S. v. Ferguson, supra,* and has been adopted, and followed, in several more recent cases. *S. v. Horton,* 100 N. C., 443; *S. v. Crowell,* 116 N. C., 1052; *S. v. Whitley,* 141 N. C., 826; *S. v. Ring,* 142 N. C., 596; *S. v. Kincaid, ibid,* 657; *S. v. Raynor,* 145 N. C., 472; *S. v. Malonee,* 154 N. C., 200; *S. v. Cook,* 176 N. C., 730; *S. v. Pace,* 159 N. C., 462; *S. v. Cline,* 170 N. C., 751; *S. v. Moody,* 172 N. C., 967; *S. v. Fulcher,* 176 N. C., 724. If we are still to follow the opinion of *Justice Davis,* which has always guided us in cases such as this one, the charge of the Court cannot be sustained. *S. v. Crowell,* 116 N. C., 1052 (opinion by the present *Chief Justice*), for he told the jury that, notwith-

standing that the prosecutrix (Darrie Ball) had committed adultery with Thomas Ball (by whom she had a child) before they were married, the jury should find that she was both an innocent and a virtuous woman. And the judge committed the same error in a more pronounced way, if anything, when he refused the clear-cut requests of the defendant for instruction as to this feature of the case. The first prayer for instructions omitted the element of seduction and defendant was entitled to have the jury charged as requested, because the defendant was not concluded by the statement of the prosecutrix that the illicit intercourse was induced by his promises of marriage. It was for the jury to say whether it was merely to gratify her lust, or was induced by his promise, and there was evidence in this case, and, too, some strong evidence, that she was a very lustful woman, and enough to justify the jury in finding that she did not require a promise to overcome the longing of her lewd nature or her lascivious desires, or even yearnings. But we may pause here to state that, on the next trial, it will be proper for the court to instruct the jury that if the prosecutrix had committed adultery with the man, who afterwards became her husband, even though it was often repeated before marriage, yet if after she thus fell, she married her lover and was always faithful to him, and ever, after the first act of adultery with him, was innocent and virtuous, that is, had not had sexual intercourse with any man, until the defendant seduced her under promise of marriage, if he did such a thing, then that she would be an innocent woman, and if she was also chaste and pure in the sense above defined, she also would be a virtuous woman within the meaning of the statute. An adulteress may reform and become innocent and even virtuous, and if this woman has done so, the statute protects her just as much as if she had never fallen, but had always walked in the straight and narrow way of spotless innocence, virtue, and chastity, not even permitting undue familiarity from any man, and especially the debaucher. This was clearly decided in *S. v. Ferguson, supra,* and some of the other cases above cited have carefully followed it.

The statute was passed to guard, and protect, the innocent and virtuous woman, and not those who seek only to gratify their own lustful desires and have no proper regard for the sacredness and purity of the marriage promise, and do not even wait for it, before yielding their persons to the embraces of evil minded men. In such a case, the woman is considered to be as bad as he is, and beyond the pale of the law's protection under this statute.

We have not overlooked the fact of the disparity in the ages of this woman and the defendant, she being fourteen years his senior, and that he contends, and offered evidence to prove, that he was the seduced, and not the seducer. She was, by her own evidence, of a most lascivious dis-

position, and seemed to have lured this young man from the path of virtue by constantly tempting him, if the testimony be true, and even going to the length of saying, unblushingly and to her open shame, that in the perpetration of the act itself, "she preferred the woods to the porch."

There was error in the respects indicated, for which another trial is necessary.

New trial.