Battle, J.
 

 The counsel for the prisoner has urged several objections to the legality of the proceedings on the trial, which, as he contends, entitle his client to a
 
 venire ele novo,
 
 and if that be not granted him, he has insisted, for several reasons, that the judgment shall be arrested.
 

 Two of the alleged errors are of the same import with some of those which were assigned, and have been overruled by us, in the case of the
 
 State
 
 v.
 
 Joseph T. Williams,
 
 decided at the present term, (ante 257.) Of the remainder, it will be necessary to notice with much particularity only one, and upon that we are, of opinion that the prisoner is entitled to another trial.
 

 The act of Assembly upon which the indictment is framed, makes the want of the written, consent of the owner, or owners, necessary to complete the offense therein prescribed. This requisition is embraced in the enacting clause of the statute and. does not come in by way of proviso or by a distinct enactment. It is therefore properly negatived in each count of the indictment.
 

 An important ’question arises; upon whom is imposed the burden of proving it? In the present case no proof of it was offered on the part of the State, and the court held that such proof was unnecessary : that it was a matter of defense which the prisoner was bound to make out; and to this ruling of the court, the prisoner has excepted. The question thus raised would be an important one in a case of less magnitude than the present, but when it comes to involve the life of the prisoner before us, and of every other person who may hereafter be indicted upon the same statute, it acquires a momentous interest, which may well make us approach it with the utmost caution and deliberation. The opinion of the court below is sought to be sustained by the general rule, which is said to be founded on convenience and common sense, that the affirmation of every allegation must be proved. “ lie who alleges a fact'to be, is naturally expected to show its existence, and not he who denies it, to show that it is not.”
 

 
 *280
 
 This is a rule of pleading and evidence: which, it is contended, extends to criminal, as well as civil cases ; and as an authority in support of it, the case of the
 
 State
 
 v. Morrison, 3 Dev. Rep. 299, is strongly relied upon. ¥e admit the general rule, and do not intend to question the authority, of the-case referred to, and yet we cannot sanction the application of the principle to the case now under consideration. We believe that it is opposed to another fundamental principle, that every person charged with a criminal violation of the laws of his country, is to be presumed innocent until the contrary is shown, and in aid of that principle, that all the facts necessary to constitute the offense must be averred in the bill of indictment, and every substantial averment must be proved on the part of the prosecution.
 

 If there be any exception-to the general rule which requires such proof, it must arise from necessity, or that great difficulty of procuring the proof, which amounts practically to such necessity ; or, in other words, where the prosecutor could not show the negative, and where the defendant could, with perfect ease, show the affirmative. The case of the
 
 State
 
 v.
 
 Morrison
 
 comes within the exception, while, as we shall endeavor to show, the case before us is governed by the general rule.
 

 The difficulty in the various' cases which have been brought before the court has arisen from the conflict of the two general rules to which we have adverted, and the question in each case has been, which of theserules must give way, when it becomes manifest that they cannot both be sustained ? It will not be disputed that the one which supports the presumption of innocence ought to be predominant; and ought not to yield to the other, unless it impose no hardships, upon the defendant, and be- necessary to prevent a serious practical difficulty in the execution of the law. In such a case the proof of a negative averment in the indictment, may be required of the defendant, upon the ground that his failure to produce what, if he has it, is sornasy for him to produce, is evidence of his guilt. Upon this ground the case of the
 
 State
 
 v.
 
 Morrison
 
 was ultimately put. It was an indictment against the defendant for retailing spiritous
 
 *281
 
 liquors by the small measure without a license. The indictment contained the negative averment of a want of license, and after a conviction without any proof on the part of the State that the defendant had no license, the question was, upon whom lay the burden of proving that fact. The court held that it lay upon the defendant; and the judge who delivered the opinion, after some remarks about the rule of proving a negative averment, and the exception, where the fact “ was not within the knowledge, or peculiarly within the knowledge of the defendant,” proceeded as follows: “But the principle applies much more forcibly, where the point in dispute is the existence -of a single and simple written document, which, if it exist at all, must be in the possession of the defendant. In such a case, the failure to produce the paper is, according to all experience of the motives and actions of men, proof that there is none such; which consideration induced me to say, that the question was rather, whether there was legal proof of the defendant’s guilt, than whether the proof should come from one side or the other. The refusal or omission to exhibit written evidence which the party alleges to exist and to be in her exclusive power and possession, containing a plain authority for her acts, creates a legal and plenary presumption against her. It seems, in and by itself, to be conclusive proof.” The learned judge then went on to show that Lord MaNSFIeld assumed the same ground in deciding the pase of
 
 Rex
 
 v.
 
 Smith,
 
 3 Bur. Rep. 1473. Similar decisions have been made, in two at least of our sister States, upon similar statutes. See
 
 Shearer
 
 v.
 
 the State,
 
 7 Black (Ind.) Rep. 99, and the
 
 State
 
 v.
 
 Crowell,
 
 25 Maine Rep. 171. The principle upon which all these cases have been sustained, is a plain, practicable and intelligible one. It imposes no hardship upon a defendant to require him to produce a written document, which his interest, as well as his duty, requires him to keep as a justification for acts which he may do every day, and many times every day. It may well be taken as conclusive proof against him that he has no such document when he fails to produce it. It is true that he may by accident have lost it, but such instances are so rare
 
 *282
 
 that they ought not to affect the rule, especially when it is considered that ho can, by proper application, procure another license, or prove its loss and give satisfactory evidence of its contents. These, and similar cases, may then well be admitted as exceptions to the general rule, that every material averment necessary to constitute a substantial offense, must be charged in the indictment, and proved on the trial, by tho State; or rather they may be admitted to come within the rule, upon the ground that a failure by a defendant to produce proof which is necessarily within his exclusive possession, is to bo deemed positive proof against him on the part of the State. So understood, the great conservative principle, so essential to the security of those charged with crime, that they shall be presumed to be innocent, until the contrary is shown, will be preserved in all its integrity. Where no necessity can be shown for departing from such general rule, it must embrace an averment though negative in its character. This is not only consonant to principle, but .will be found to be supported by tho highest authorities. Thus in the caso of
 
 Williams
 
 v.
 
 the East India
 
 Company, 3 East’s Rep. 192, it was held by Lord ElleNBObough, and the whole Court of King’s Bench, after an elaborate argument by very able counsel, and after an
 
 admisari
 
 by the Court, that where the plaintiff declared that the defendants, who had chartered his ship, put on board a dangerous commodity (by which a loss happened) without due notice to the Captain, or any other person employed in the navigation of the ship, it lay upon him (the plaintiff) to prove such negative averment.
 

 The ground of the decision was, that as it'was an imputation of criminal negligence upon the defendants, to charge them with putting an article of a dangerous quality on board the ship, without-giving- due notice thereof to those concerned in the management of her, the presumption was in favor of their innocence, until the plaintiff could show their guilt.
 

 A still stronger case is
 
 Rex
 
 v. Rogers, found in 2 Camp. Rep. 654 The defendant was indicted upon the statute of 12 Geo. 3 ch. 107 sec. 1, which makes it felony for any person
 
 *283
 
 to hunt deer in an enclosed ground,
 
 without the consent of the owner.
 
 LawRENCb, J., before whom the case was tried, decided
 
 “
 
 that it was necessary on the part of the prosecution, to call the owner of the deer, for the purpose of proving that he had
 
 not
 
 given his consent to the prisoner to course them.” The owner did not appear as a witness, and the prisoner was acquitted. This case, it is true, was decided at
 
 Nisi JPrkis,
 
 but it was before a very able judge, and was referred to with approbation by this Court in the
 
 State
 
 v.
 
 Morrison.
 
 If we admit the authority of this case of
 
 Rex
 
 v. Rogers, it seems to us that it must govern the one now under consideration. The only perceptible difference between them, is, that in orn-ease, the consent of the owner is required to he in writing, but that cannot, we think, alter the principle, particularly as in our case, the statute takes away from the felony the benefit of clergy. The owner can be as easily called by the State to prove the want of his written consent, as by the prisoner to prove its existence. It is manifest that the latter cannot be expected to preserve such written consent, so as to have it always ready to produce in his defense. There is no statute of limitation against a prosecution for a capital (or indeed any other) felony, and it would be requiring too much of a person charged under the statute in question, to hold him bound to keep a small piece of writing an indefinite number of years, at the peril of his life.
 

 Oar conclusion then is, that the State was bound to prove the negative averment that the alleged offense was committed without the consent in writing, of the owner of the slave.
 

 In coming to this conclusion, we are gratified to find that the principles upon which our argument is based, are sustained, not only by the authorities to which we have already referred, but by the Supreme Court of Massachusetts, in an able opinion delivered by Shaw, C. J., in the case of the
 
 Commonwealth
 
 v.
 
 Thurlow,
 
 24 Pick Rep. 374.
 

 As the prisoner is entiled to a
 
 mni/re de novo
 
 for the error committed by the jn-esiding Judge upon the question which we have already considered, we will not notice the other ques
 
 *284
 
 tions presented in the bill of exceptions, because one of them bas been determined in another case, and the other will not necessarily arise on the next trial.
 

 Of the objections urged on the motion to arrest the judgment, there is only one which seems to be well founded, and which it is necessary for us at all to consider. The counsel for the prisoner contends that the verdict is insufficient to au-thorise the judgment of death which was pronounced upon-him; and that such judgment must not only be 'arrested, but the prisoner cannot be put upon his trial again, and is therefore entitled to be set at liberty. To show' that the verdict is fatally defective, the counsel has referred ns to the case of the
 
 State
 
 v.
 
 Edmund,
 
 4 Dev. Rep. 340. And he contends that as the jury were discharged without having rendered a sufficient verdict, it is the same as if they were discharged without returning any verdict at all. It is true, that if a jury be empan-nelled in a capital case, they cannot be discharged
 
 before
 
 returning the verdict, at the mere discretion of'the court and without the prisoner’s consent. To justify such a course, there must be some evident, urgent, overruling necessity, arising from some matter occurring during the trial, which was beyond human foresight and control.
 
 Spier’s
 
 case, 1 Dev. Rep. 491;
 
 State
 
 v.
 
 Ephraim,
 
 2 Dev. and Bat. Rep. 162. In the present case, the jury did return a verdict, and were then permitted by the court to separate and go at large, without any objection from the prisoner ; which makes it a very different case from those referred to. So, supposing that the verdict is entirely insufficient to support the judgment which was pronounced upon it, we cannot yield to the argument of the prisoner that he cannot be'tried again for the same offense. The case of the
 
 State
 
 v. Edmund, upon which the counsel relies to show that the verdict is defective, decides that the proper course is to reverse the judgment, and order a
 
 venire de novo.
 
 But the Attorney General contends that the verdict is not fatally defective, and he has made a very ingenious argument, to show that there is a substantial difference between it and that which was rendered in the
 
 State
 
 v.
 
 Edmund.
 
 It would
 
 *285
 
 not answer any good purpose for ns to decide the question, because there is very little probability of its occurring again, and we have already, upon another ground, granted to the prisoner all the advantage which he could have from a decision in his favor upon this.
 

 This opinion must be certified to the Superior Court of law for tiie county of Bertie, to the end that a
 
 venire de novo
 
 may be awarded by that court.
 

 Pee Cueiam. . Judgment reversed.