---

STATE *v.* R. R.

---

STATE *v.* ATLANTIC COAST LINE RAILROAD COMPANY.

(Filed 5 November, 1908).

**1. Penalty Statutes—Railroads—Sunday, Running of Freight Trains —Permission—Evidence.**

Upon a trial under an indictment against a railroad company for loading, running, etc., a freight on Sunday, in violation of the provisions of Revisal, 3844, the State must show, beyond a reasonable doubt, that the defendant had permitted the offense to be done; but when the State has shown the wrongful act, it is sufficient for the jury to find that it was done with defendant's permission.

**2. Same—Reasonable Doubt—Burden of Proof.**

Upon trial for violating the provisions of Revisal, sec. 3844, it is error for the lower Court to charge the jury that the burden was upon defendant to show that a certain freight train was run without its permission, when there is conflicting evidence upon that question; for, in order to convict, they should find as a fact, beyond a reasonable doubt, that the defendant had permitted the running of the train in violation of the statute.

**3. Penalty Statutes—Railroads—Evidence—Questions for Jury.**

When a *prima facie* case is made out by the State against a railroad company for running its certain freight train on Sunday, in violation of Revisal, sec. 3844, and the company has introduced evidence tending to prove that it was done without its permission, it is error in the lower Court to charge the jury, if they should find from the evidence that the train in question belonged to the defendant, they should find the defendant guilty, unless its evidence satisfies them that the train was being run without its permission, as the question is exclusively one for the jury.

INDICTMENT tried before *Neal, J.;* and a jury, August Term, 1908, of WILSON.

This is an indictment for permitting a train of cars to be run on Sunday, between sunrise and sunset, contrary to sec. 3844 of the Revisal, which is as follows: "If any railroad company shall permit the loading or unloading of any freight car on Sunday, or shall permit any car, train of cars, or locomotive to be run on Sunday on any railroad (except the trains specified in the section) such railroad company

shall be guilty of a misdemeanor in each county where such car, train of cars or locomotive shall run, or in which any such freight car shall be loaded or unloaded, and upon conviction shall be fined not less than five hundred dollars for each offence." The evidence introduced by the State tended to show that on Sunday, 19 May, 1907, a freight train passed through Wilson, it being a "solid coal train," with an engine and tender on which were the letters A. C. L., they being the initial letters of the defendant's corporate name. The train was going south between five and six o'clock P. M. The defendant objected to this evidence in apt time, because it was alleged in the indictment that the train was "run" on 1 May, 1908, whereas the proof is that it was "run" on 19 May, 1907. The objection was overruled and the defendant excepted. The evidence of the defendant tended to show that those having the authority to supervise and control the movement of trains, on the defendant's road, had positively forbidden the operation or running of any train on Sunday, contrary to the provisions of the statute. This evidence was in the form of special instructions to subordinates in the service, who had the immediate charge of the operation of trains, whose duty it was to obey all orders received from their superiors. It was also in evidence that the train mentioned in the indictment was run without the knowledge or consent of the defendant, and in violation of previous orders issued by it.

The Court charged the jury as follows: "If you find that the freight train loaded entirely with coal passed through Wilson on 19 May, 1907, before sunset, pulled by an engine belonging to the defendant, then you should find the defendant guilty, unless the evidence offered on the part of the defendant satisfies you that said train was running without the permission of the defendant. The burden of proof on the question whether the train was run by the permission of the

defendant is on the defendant." To this instruction the defendant excepted.

The Court further instructed the jury that the ownership of the coal and the purpose for which it was transported was immaterial. Defendant excepted.

The defendant was convicted. A motion for a new trial having been overruled and judgment pronounced upon the verdict, the defendant appealed.

*Assistant Attorney-General Hayden Clement* for the State.
*F. A. & S. A. Woodard* and *Aycock & Daniels* for defendant.

WALKER, J., after stating the case: The offence created by the statute in question consists in the running of trains on Sunday by permission of the railway company. The statute is not so worded as to withdraw from its operation, by exception or proviso, trains which are run without the consent of the railway company, but the permission of the company is made an essential ingredient of the offence, and under well-settled rules of criminal pleading the State is called upon to show the permission in order to convict the defendant. This is not imposing upon the State a burden of proof which it is impossible to carry or requiring it to prove a fact, the existence of which can be more easily established by the defendant, for the plain reason that when the State has shown that the train was actually run on a Sunday, it has adduced evidence sufficient to warrant the jury to infer that it was done with the defendant's permission. It is a circumstance sufficient, at least, to support a conviction. It cannot be said, though, that the defendant is guilty simply because the train was drawn by one of the defendant's locomotives, for this would be taking evidence of the fact that it was run with the permission of the defendant for the fact itself. Instead of charging the jury as he did, the Judge should have instructed them, not that the burden was on the

defendant to show that the train was run without its permis-
sion, which was telling them practically that the burden was
on the defendant to acquit itself of the charge, but he should
have charged that they should consider all of the testimony
and find as a fact beyond a reasonable doubt that the defend-
ant had permitted the train to be run on Sunday, before
they could convict. The permission of the defendant is as
necessary to the completeness of the offence, as the running
of the train itself. It is of the very substance of the crime.
Instead of thus charging the jury, the Court excluded the
doctrine of reasonable doubt from their consideration, by
making the verdict of guilty depend upon the finding of a
single evidentiary fact, and placing the burden of disproving
the leading constituent element of the crime upon the de-
fendant. The Court, under this statute, misplaced the bur-
den of proof. It was upon the State and did not shift during
the trial. The distinction is between a fact which is made an
essential element of the crime by the statute, and one which,
by virtue of a proviso or otherwise, merely withdraws the
particular case from its operation, or excludes it from the
prohibited class. Many illustrations of it are to be found
in our decisions.

The first instruction in this case is not substantially differ-
ent from the one given in *State v. R. R.*, 145 N. C., 570.
If the Judge had submitted the case to the jury upon the
entire evidence, giving the defendant the benefit of the doc-
trine of reasonable doubt, and then told them that if they
found the two essential facts, that the train was run on
Sunday and with the permission of the defendant, the charge
would have been in accordance with our ruling in that case.
That was not done, but the defendant was erroneously placed
at a disadvantage by being required virtually to disprove
the fact of permission. The jury must find the fact of guilt;
the Judge only declares the law.

In *State v. Simmons,* 143 N. C., 618, 619, we said: "The

jury are the constitutional judges, not only of the truth of testimony, but of the conclusions of *fact* resulting therefrom. The evidence may, in the opinion of the Court, have been ever so strong against the defendant, yet it was for the jury to find the ultimate fact of guilt, without any suggestion from the Court, direct or indirect, as to what that finding should be. (*State v. Lilly,* 116 N. C., 1049). The presumption of innocence and the doctrine of reasonable doubt (alike) require that method to be pursued, and it is clearly enjoined by the statute we have cited (Revisal, sec. 535), the restraining words of which define clearly the respective functions of Court and jury in the trial of causes."

Upon the other question, as to the burden of proof, we need only refer to a few recent cases decided by this Court. "The general rule most undoubtedly is that the truth of every averment, whether it be affirmative or negative, which is necessary to constitute the offence charged must be established by the prosecutor. The rule itself is but another form of stating the proposition that every man charged with a criminal violation of the law is presumed to be innocent until shown to be guilty, and it is founded, it is said, upon principles of natural justice, and so forcibly has it commended itself by its wisdom and humanity to the consideration of this Court, that it has never felt willing, whatever circumstances of difficulty might attend any given case, to disregard it." *State v. Wilbourne,* 87 N. C., 532. That case was approved in *State v. Connor,* 142 N. C., 700. Even if the burden of proving that there was no permission to run the train was upon the defendant, the charge is still erroneous, because the ultimate fact of guilt was for the jury to find from all the evidence, and not for the court to declare. *State v. Woodly,* 47 N. C., 276; *State v. Evans,* 50 N. C., 250; *State v. Mc-Daniel,* 84 N. C., 803. The last three cases are cited with approval in *State v. Wilbourne, supra.*

It is suggested that the Court should have charged the

jury that, if they believed the evidence, they should convict the defendant. The Court could not well have instructed the jury to this effect, without disregarding material evidence in the case which tended to show the defendant's innocence. It is quite true that there was evidence of the defendant's guilt, but it was for the jury to say, at last, whether they were convinced of the defendant's guilt by that evidence, when weighed with the other evidence in the case. We are not permitted to refer to matters not stated in the record, nor could the Court below or the jury consider them.

The statute under which the indictment was found is a very wise and wholesome one, and should be obeyed by the railway companies and enforced by the Courts, but a defendant is entitled to have the question of its violation determined by the well-settled rules of law and, in any view we can take of the proceedings in the Court below, we think this was not done, and hence there was error.

New trial.

CLARK, C. J., dissenting: The conduct denounced by the statute, Revisal 3844, is "permitting any car, train of cars, or locomotive to be run on Sunday" between certain hours (with certain exceptions which are matters of defence and which, besides, clearly do not arise on the evidence in this case).

The evidence is uncontradicted that on 19 May, 1907, which was Sunday, before sunset, between 5 and 6 P. M., a solid coal train passed through Wilson on defendant's road, the engine and tender marked with defendant's name. It was in evidence by defendant's witness, W. H. Newell, its Superintendent of Transportation, that at the term of the Court ending Saturday, 18 May, 1907, the defendant had pleaded guilty to two indictments under this statute and a *nol pros* was entered in another case upon the "agreement" of defendant not to "run its trains on Sunday in violation

of law." The same witness testified that the coal in the above train was the property of the defendant, and was being transported to Florence, S. C., for its use. Another witness for defendant, G. B. McClellan, its District Superintendent, testified that this train was made up and sent out of Rocky Mount by E. D. Gordon, local agent, H. E. Bruffery, train master, E. S. Dodge, chief train dispatcher and A. E. McKeathan, yard master, who "had charge of the Rocky Mount depot and yard, and the trains sent out from Rocky Mount were made up by these parties."

Thus there is proof from the defendant that this train running on Sunday, in violation of law, was made up and sent out by the *officials charged with that duty*.

Upon this evidence, the Court should have charged the jury, "if you believe the evidence, you will find the defendant guilty." How else could the defendant send out its trains, except by its officials charged with that duty? If the defendant is not responsible for their acts, acting within the scope of their duties, what would make a corporation liable? If they did it, the question of "permitting" it to be done does not arise.

In *State v. R. R.,* 119 N. C., 819, an indictment upon this very statute, where there was no evidence whatever except the fact that the defendant's freight train was running on Sunday after 9 A. M., the judge charged the jury, "If you believe the testimony the defendant is guilty," and on appeal *Avery, J.,* speaking for a unanimous Court, found no error.

There has been no change in the statute and no reason is given why a charge which was correct then has become erroneous now. Upon the above evidence, by the higher officials of the defendant, that the train was sent out from Rocky Mount by the four officials "having charge of the Rocky Mount depot and yard, and the trains sent out from Rocky Mount were made up by these parties," the jury could draw no other inference, "if they believed the evidence," than

that the defendant was guilty. *State v. Riley,* 113 N. C., 651.

It is true Mr. McClellan adds, "it was the duty of these parties to have obeyed the order sent them," which he says was sent by himself, not to send trains out before sunset, and that it was sent out without his knowledge or consent. Mr. Newell says he wrote Mr. McClellan that "it was out of the question to run any solid coal trains on Sunday, even if there be a congestion. In view of the fact we have additional power to handle the business currently, it should not be necessary to run trains of this nature on Sunday. We have recently had some complication on this account, and I hope you will see that these instructions are enforced."

But taking the defendant's own evidence to be true, the instructions were *not* enforced and the train was permitted to be made up and sent out from Rocky Mount and was run on Sunday by Wilson and on towards Florence. It was "permitted" because the official who could have prevented it and who could and should have stopped the train did not do so. *State v. Probasco,* 62 Iowa, 400; *Ter. v. Stone,* 2 Dak., 155; *Com. v. Curtis,* 91 Mass., 266. It was his duty to do so, for he says he was instructed to enforce the order. His failure to do so "permitted" the train to run. The "permitting" the train to run by Newell and McClellan was "permitting" by the company—if their conduct had been all that made the corporation liable. But there was more than permission. There was the wilful act of the company when its four officials at Rocky Mount, "charged with the duty of making up and sending out trains" from that point, sent out this train. Their act was the act of the company. The State cannot be called upon to prove that an act was done by a defendant's permission when it shows that it was the intentional act of the defendant itself. A corporation acts by its agents. Their wilful act in the discharge of a duty entrusted to them is the act of the corporation. If they disobeyed an

imperative order from those "higher up" it was permissive
as to those higher officials who did not supervise their de-
partment and enforce their orders, but none the less is the
company responsible. There is no explanation why the four
officials at Rocky Mount should have broken their own rest
on Sunday and violated the law by breaking the rest of the
engineer and train crew on that holiday, with no possible
motive suggested for risking their positions by disobedience
of orders. No reprimand or punishment is suggested to have
fallen upon these four officials.

Not only did they, in the scope of their powers, send out
this train without let or hindrance from McClellan and
Newell (and therefore by their "permitting" it to be done),
but the engineer and crew in running the train were acting
in their sphere, and under the orders of those charged with
the duty of ordering them. Their intentional act, in the
scope of their duties, is the intentional act of the company.
No "permitting" need be shown when the running was in-
tentional. The train passed through Elm City only by the
act of another agent of the company, acting within his sphere
in turning the white or safety end of the switch out and per-
mitting the train to pass, and the same is true of the agent
at Wilson, and possibly of the agent at Sharpsburg. *Stewart
v. R. R.,* 141 N. C., 271.

Thus agent after agent of the defendant company, acting
in the scope of his duties, concurred in starting and running
this train on Sunday. They did this act, not merely by per-
mission, but the engineer and crew did so under orders, and
for the conduct of its agents the defendant is responsible.
If there had been injury by the negligence of either one of
these numerous agents, the company would have been liable
for that reason. Taking cognizance of the matters and
knowledge "acquired by their observation and experience in
every day life," as we hold a jury can do (*Wright v. R. R.,*
127 N. C., 227; *Lloyd v. R. R.,* 118 N. C., 1013; *Deans v.*

*R. R.,* 107 N. C., 693) this jury might well infer that other and higher officials had cognizance of and caused this train to start and keep on. There must have been reports by telegraph to Wilmington and response from the office at the headquarters there to avoid collision with other trains. *Stewart v. R. R., supra.*

As to these two officials, Newell and McClellan, while they testify to having given orders, they do not testify to any effort whatever to put the order in force. The running of the trains, which it was their duty to know of and prevent, without any effort shown on their part to prevent, was "permitting" it, by the corporation, so far as the conduct of these officials was concerned, who could have stopped it and did not.

This law was enacted in 1879, nearly 30 years ago, to secure to some part of the employees of railroads a rest for a part—8 or 9 or 10 hours, according to the season—on the Sabbath day. These employees cannot move to secure their rights under this law with safety to their positions. They are helpless before so great powers as these great corporations can exert unless the law comes to their aid.

This jury from common observation knew that this was not an accidental train, by mistake run before sunset on that Sunday. It was in evidence before them, in this very case, that the defendant was an habitual criminal in this respect, for at the court ending the day before this train was run the defendant was convicted on two indictments for this offense and a *nol pros* was entered on a third indictment on defendant "agreeing" to stop "running its trains on Sunday in violation of law."

The charge of the Court therefore was not error, for, if defendant's own evidence alone was believed, this train was run by orders of those empowered to send out trains, and by the permission of those who could have stopped it, and did not.