## STATE v. RING.

(Filed October 16, 1906).

*Seduction Under Promise of Marriage—Evidence—Suffi-ciency.*

1. In an indictment for seduction under promise of marriage, it is not necessary for the State to show that the defendant directly and expressly promised the prosecutrix to marry her if she would submit to his embraces, but it is sufficient if the jury, under the evidence, can fairly infer that the seduction was accomplished by reason of the promise, giving to the defendant the benefit of any reasonable doubt.

2. In an indictment for seduction under promise of marriage, where the evidence shows that the prosecutrix trusted to the defendant's pledge that he would never forsake her and to his promise of marriage when she permitted him to accomplish her ruin, a conviction was proper, and the mere fact that the promise existed long before the seduction can make no difference, if he afterwards took advantage of it to effect his purpose.

INDICTMENT against E. L. Ring, heard by *Judge M. H. Justice* and a jury, at the February Term, 1906, of the Superior Court of COLUMBUS.

The defendant was indicted for seduction under promise of marriage. The prosecutrix testified that she first knew the defendant in 1901, when he made love to her, and they became sweethearts; that she went with him two years. . He courted her and she promised to marry him. She did not go with any one else. He made a request of her a year before she yielded, which was in August, 1904, and she became pregnant in November of that year. He said it was his right to do as he wanted to with her under the circumstances, and to prove her love she yielded to him. The defendant left the State in April, 1905. The child was born the following August. He said he loved her and would not believe she loved him unless she yielded to his wishes. She yielded to his wishes, and she still loved him and believed everything he said. He said further that he would never forsake her, but would stick to her forever. They had been engaged over a year when she yielded to his approaches the first time, but before that he had promised her that he would never forsake her, that he intended to marry her anyhow, and that it was his right to have his way with her, and that he would not believe that she loved him unless she yielded, and she did so to prove her love for him. There was also evidence tending to support the testimony of the prosecutrix. Letters from the defendant to her were read as evidence. In these he admitted having promised to marry her, and that he had sexual intercourse with her. He requested her not to tell any more than she had to tell, and not to have a lawsuit, as it would make things worse. In one of the letters he states that he is deeply sensible of the great wrong he had done. He inquires if either of them was to blame, as one could not help it more than the other, and wants to know if a satisfactory settlement cannot be made. Several times he warns her

against being deceived, and insists that she should say as little about it as possible. He further says that while it is an unfortunate affair, it is no more than others have done; that he had been caught, and that is all, but that the affair had not caused him to leave home, but other circumstances forced him to leave. In one letter is this expression: "You have trusted in my honor in the past. I now trust in yours to do all that you can to prevent so much publicity by having a lawsuit, which will not bring to light anything that will be to our credit or in our favor. I cannot see what good it will do you or any one else if you convict me." He then threatens that, if the matter is prosecuted, he will disclose something that will not be to her credit or to that of her people, and adds: "I know that you are not the one who is prosecuting (implying that her brother is), but it depends on what you say. I am not uneasy about being convicted, but it is on your account that I want this settled without going to Court. I want to see you first chance." In still another letter he says: "You have sacrificed your virtue for the gratification of the passion of a man who is worthy of a letter from you. Will you be kind enough to write something and tell me what you expect of me, and what you hope to accomplish by going to law?" There was evidence to the effect that the prosecutrix had been a chaste, virtuous, and innocent woman before the time of the alleged seduction.

The defendant's counsel requested the Court to charge the jury: "That under all the evidence in the case, the defendant is not guilty." The Court refused so to charge and the defendant excepted. The jury convicted the defendant, and from the judgment upon the verdict, he appealed.

*Robert D. Gilmer, Attorney-General,* and *Walter Clark, Jr.,* for the State.

*D. J. Lewis* and *J. B. Schulken* for the defendant.

WALKER, J., after stating the case: The defendant's coun-
sel, in their brief, contend that there was no evidence in the
case that the prosecutrix was seduced under a promise of mar-
riage. The gravamen of this offense is seduction, induced by
the promise which the defendant has failed to keep. There
are other essential elements, but this is the principal one, and
if there was no evidence of it, the defendant should have
been acquitted. We think that there was not only some, but
abundant evidence to warrant the verdict of the jury. It is
not necessary to a conviction under this law that the State
should show that the defendant directly and expressly prom-
ised the prosecutrix to marry her if she would submit to his
embraces. It is quite sufficient if the jury from the evidence
can fairly infer that the seduction was accomplished by rea-
son of the promise, giving to the defendant the benefit of any
reasonable doubt.

But in this case, the defendant admits in one of his letters
to the prosecutrix that she had trusted in his honor and that
he was deeply sensible of the great wrong that he had done
her, and that she had sacrificed her virtue at his solicitation
when they were engaged to be married. While under a
promise of marriage to her, he told her that he would not
believe that she loved him if she did not comply with his
request, and she yielded to prove her love for him. Just
before she did so, he promised never to forsake her, and
boldly and shamelessly asserted that he did not ask her con-
sent as a favor, but as something to which he was of right
entitled by reason of their engagement. Is it possible for
evidence to be stronger for the purpose of showing a seduction
accomplished by a promise of marriage? The mere fact that
the promise existed long before the seduction can make no
difference, if he afterwards took advantage of it in order to
effect his nefarious purpose. His conduct, in such a case,
would be the more reprehensible as showing a studied and
deliberate purpose, first to engage her affections and then by
taking advantage of her weak and confiding nature and the

trustfulness he had inspired by his perfidy to insidiously ensnare her with his wicked and faithless promises of love and constancy.   Such base conduct is the legal equivalent of an express promise to marry if she would submit to his lecherous solicitations, provided the jury found, as they did, that it had the effect of alluring her from the path of virtue. If he made his promise to her in good faith, why did he not keep it when he found that he had ruined her and when she most needed the protection of his name ?   It being admitted that he made the promise, his gross betrayal of her was surely a fact to be considered by the jury in determining his guilt.   It is against the wily arts of the seducer that the law would protect the innocent woman, and he can effect his purpose just as well by first gaining the confidence and affection of his intended victim and then inducing her to surrender her chastity and finally debauching her by means of persistent appeals to her supposed sense of duty and obligation to him as her lover.

The evidence in the case forces the conviction upon us that this unfortunate woman trusted to his pledge that he would never forsake her, and to his promise of marriage, when in an evil moment she permitted him to accomplish her ruin.

The defendant's counsel relied on *State v. Ferguson,* 107 N. C., 841, and quotes this passage from the opinion of the Court by *Justice Davis:* "If she willingly surrenders her chastity, prompted by her own lustful passions, or any other motive than that produced by a promise of marriage, she is *in pari delicto,* and there is no crime committed under the statute."   That is very true.   But the principle there stated does not fit the facts of this case.   If the evidence is trustworthy, there is hardly anything in it to indicate that she sacrificed her chastity in order to gratify her own lascivious desires.   At least, the jury could well have found that she did not do so, but, on the contrary, that in the trustful and abiding belief that the defendant would not betray her, but fulfill his promise of marriage, she yielded at last to his urgent ap-

peals. The case is rather to be governed by another principle stated in that case: "The purpose of this statute is to protect innocent and virtuous women against wicked and designing men, who know that one of the most potent of all seductive arts is to win love and confidence by promising love and marriage," in return.

The case of *State v. Horton*, 100 N. C., 443, is authority for the position that the State is not required to show that the defendant, in so many words, promised to marry the woman if she would agree to submit to carnal intercourse with him, or, in other words, to show the causal relation between the promise of marriage and the seduction by any set form of words; but it is sufficient if the evidence is such as to convince the jury to the exclusion of all reasonable doubt that the woman was influenced by the promise and the man intended that she should be, or so purposely acted as to produce the impression on her mind that he would keep his promise if she would comply with his request. The jury are to draw their own deduction from the testimony, provided there is even inferentially any evidence of a purpose to violate the statute. Besides all this, what the defendant said in his letters is, of course, evidence against him as to what his purpose or intention was and as to what he actually said and did. "I am deeply sensible of the great wrong that I have done. Don't be deceived, and be sure that you know your friends. Have as little to say about it as possible. You have trusted to my honor in the past. While this is a very unfortunate affair, it is no worse than others have done." These expressions, taken from the evidence, are much stronger in their tendency to establish the guilt of the defendant, or his vicious purpose throughout his intimate association with the prosecutrix, than were the words used by the defendant in his conversation with the woman's father, which were held to be sufficient to sustain the verdict in the *Horton case*.

We can see no error in the ruling of the Court.

No Error.