WALKER, J., concurring with opinion; HOKE, J., concurring in result; ALLEN, J., dissenting; BROWN, J., concurring in the dissenting opinion of ALLEN, J.
The defendant was indicted and convicted for seduction under promise of marriage, and appealed.
The defendant has twice been convicted by the unanimous verdict of a jury — twenty-four men, each of whom found that the defendant was guilty beyond a reasonable doubt, and the judge on both occasions held that there was sufficient evidence in support of the woman's testimony to submit the case to the jury. This Court is now asked by the defendant to adjudge whether there was supporting evidence when it has convinced two juries who heard it, saw the demeanor of the witnesses upon the stand, and who by the Constitution were charged with finding the facts. The judge set aside the verdict of the first jury, but it was stated on the argument, and not controverted, that this was not upon the ground of any doubt of the correctness of the verdict, but because, after verdict, the defendant raised the technical point that one of the jurors was related to the prosecutrix. This did not require the judge to set aside the verdict, but was a matter resting entirely in his discretion. S. v. Maultsby,130 N.C. 664, and cases there cited and citations thereto in the Anno. Ed.
Reviewing this testimony, the presiding judge properly submitted it to the jury.
The prosecuting witness testified that she and the defendant "became engaged in the fall of 1916," and that at Christmas "he had promised to marry me, and I thought he would keep his word; so I yielded to him." She testified that he began to visit her in the summer of 1915 and continued to do so till April or May, 1917, when he ceased coming; that during this time he would come to see her, and she would sometimes meet him at church and he would take her home; that she had other beaux, but was never engaged to any of them, nor was there any improper conduct with them. Four witnesses on the part of the State and *Page 733 
three on the part of the defendant testified to the good character of the prosecutrix, and there was no testimony to the contrary. The child was born in September, 1917. The above was testimony in support, even if there was nothing more, though in this case there was. In S. v. Horton, 100 N.C. 448, the Court says: "The virtuous character and conduct of the prosecutrix was proved and conceded; so the testimony of the injured girl was not `unsupported,' but derived confirmation from that of others as the statute prescribed."
In S. v. Malone, 154 N.C. 202, the Court says: "The prosecutrix testified to the promise of marriage, the seduction, and innocence and virtue. A child was born to her and was 18 months old at the time of the trial. There was evidence tending to show that prior to her alleged seduction by the defendant she had always been a woman of good character and led a blameless life, and that as a school girl she had borne a good reputation with her teacher and schoolmates. This was sufficient toconstitute supporting testimony within the meaning and requirement of the statute."
These two cases are exactly in point, and if there had been no other evidence, amply sustain the action of the judge and of the two juries.
But there is other supporting testimony in this record of the promise of marriage: For nearly two years the defendant was going with the prosecutrix from the summer of 1915 to April or May, 1917. She testifies to this and is supported by the testimony of her mother, of her father and of the defendant himself. This was held sufficient in S. v. Moody, 172 N.C. 967, in which Walker, J., speaking for a unanimous Court and citing several cases, held as set out in the headnote:
"Criminal Law — Seduction — Trials — SupportingEvidence — Statutes. Upon trial under an indictment for seduction under a breach of promise of marriage (Revisal, sec. 3354), requiring supporting evidence to make that of the prosecutrix competent upon the three elements of the crime, it is not necessary that the supporting evidence be sufficient, as substantive evidence, for conviction; and where the good character of the prosecutrix before the act has been testified to by other witnesses, the act itself admitted, and there is testimony that the defendant had paid the prosecutrix exclusive and assiduous attention for years under circumstances evidencing that he was her accepted lover, her testimony as to the promise of marriage is sufficiently supported by the testimony of others to be competent within the meaning of the statute." This case has been approved and followed in S. v. Fulcher, ante,724.
It is not within the province of this Court to review and weigh the testimony and determine what the verdict should have been; that was a matter for the jury, subject to the revising power of the trial judge if he deemed the verdict against the weight of the testimony, which he did *Page 734 
not. The only power committed to this Court is to say whether there was any testimony in "support" of the woman's testimony, and the above cited cases hold that the circumstances above recited, and which appeared in this case, were sufficient to be "supporting testimony." It must be remembered that this offense is always committed in secret, and the testimony "in support" is not required to be by an eye-witness.
But there was further corroborating testimony in this case. There was evidence in this case by the father and mother that when her condition was first discovered the prosecuting witness told them that she and the defendant had been engaged, and that the defendant was the father of her child. In S. v. Whitley, 141 N.C. 823, the defendant excepted that the mother of the prosecutrix was allowed to testify, as here, that after she discovered her daughter's condition the daughter told her that the defendant had promised to marry her and she loved him. The Court (at p. 825) said: "The statements made by the prosecutrix to her mother were competent to corroborate her testimony on the trial."
In S. v. Kincaid,142 N.C. 657, similar statements were admitted as corroboratory evidence. Again, it is said in S. v. Pace,159 N.C. 464: "It is well settled that statements to others that the prosecutrix and the defendants were going to be married are competent for the purpose of corroborating the testimony of the prosecutrix that defendant had offered and promised to marry her."
There was further evidence that on Christmas day, 1916, after their engagement, the defendant came to her home and took her in his buggy to Mrs. Tharrington's to spend the night, and the next day to Mr. Carter's, and they were there several days. This was evidence tending to corroborate the engagement which she testified to as then existing, and neither Mr. or Mrs. Tharrington nor Mr. Carter was called to contradict this significant testimony. It is a most pregnant fact in corroboration that the child was born exactly nine months afterwards.
Upon the above authorities, there was abundant evidence to carry the case to the jury of the vicinage, who, knowing the witnesses and the credit which should be given their testimony, and having the opportunity to observe their conduct and bearing on the stand, and other pointers to the truth (which cannot appear in the dry transcript of the record to this Court), have acted within the authority confided to them by the Constitution, and upon their oaths have twice said that beyond a reasonable doubt on the part of any of the twenty-four, against none of whom the defendant urged any objection, that he was guilty beyond a reasonable doubt. To require more evidence in a case of this kind would be practically to repeal the statute. There is no reason why the *Page 735 
requirement in the statute should in this case extend beyond what the Court has heretofore held.
There is no crime more despicable than this. It is committed in secret, by lust and lying, by deception and the stronger taking advantage of the weaker. Yet, under the influence of medieval ideas, it was not made a crime in this State till the act of 1885. The proviso that the testimony of the woman should not be sufficient to convict unless supported was not, however, intended to "throw the monkey-wrench into the machinery" and prevent the possibility of conviction. Prior to that time, the only remedy was by a civil action, with the humiliating requirement, under the common law, that it should be brought by the father, alleging the loss of the services of his daughter as his servant. But even then the common law did not disparage the testimony of the daughter as unworthy of belief unless "supported."
Upon the statute as written, and upon the precedents, there was not only evidence in support, but as much as can ordinarily be offered as to an offense of this kind, committed in secrecy. There was unqualified evidence of the promise of marriage, though in S. v. Ring,142 N.C. 596, it was held that it was sufficient if this could be reasonably inferred from the evidence; there was evidence of the good character of the girl, which was held sufficient supporting testimony in S. v. Horton,100 N.C. 448, and S.v. Malonee,154 N.C. 202; there was evidence that she told her mother and father of the engagement and the conduct of the defendant, which was held sufficient as supporting testimony in S. v. Moody,172 N.C. 967, and numerous cases there cited by Walker, J., from this and other States. The testimony of the mother that the daughter told her of her engagement and of the conduct of the defendant was also held sufficient in S. v. Whitley,141 N.C. 823, and S. v. Kincaid, 142 N.C. 823. There was also evidence of the continuous courtship for two years, and of their visiting together at the houses of friends and relatives at Christmas, 1916, for several days, and the further striking fact that the child was born 25 September, 1917, exactly nine months later.
The act of 1913, ch. 73, provides that if on this motion the judgment of nonsuit is allowed on appeal, "It shall, in all cases, have the force and effect of a verdict of not guilty." This is not, therefore, the case of a new trial for some error of the judge, but is a verdict by the court of not guilty, which theretofore was without precedent. But the statute certainly did not intend that this Court should weigh the evidence and render a verdict.
As to a similar statute in civil cases (chapter 109, Laws 1897), we said, in Willis v. R. R.,122 N.C. 908: "The act was not intended to deprive parties of the right to trial by jury when there is any evidence." *Page 736 
This has been often cited since. (See Anno. Ed.) The rule that, on motions for a nonsuit, the evidence must be taken in the light most favorable for the State or plaintiff, and with all the reasonable inferences that can be drawn from it, is more than ever essential if we are to preserve the constitutional principle that the facts are to be found by a jury, and not by the court.
As to the offense here charged, it is true, the statute forbids the jury to believe the witness for the State, even though as a matter of fact they do believe her testimony, unless she is "supported." "The statutes does not specify how much or in what way she shall be supported, but simply that she shall be supported" (Brown, J., in S. v. Pace, 159 N.C. 462), and no case has ever held insufficient such evidence as this.
This discrimination against the woman is the only instance now in our statutes where a whole class is branded by the statute as unworthy of belief, unless there is testimony to support them. As to treason, owing to the fearful penalties formerly of being drawn to the place of execution, disemboweled, and the head, after execution, being exposed, and other barbarous penalties, the law did require two witnesses, but this did not ban any particular class of witnesses, and the defendant at that time was not allowed to testify in his own behalf. As to perjury, it has been held that something more than one witness is necessary, because it was oath against oath. But in neither of these cases was the requirement discounting the testimony of the witness a disqualification to one class of people only. Besides, in North Carolina there have been no trials for treason since we entered the Union, in 1789.
On the other hand, there are offenses as to which the law, instead of disparaging the testimony for the State, provides that when a certain state of facts is shown, there is a prima facie evidence of guilt, as, for instance, that when killing with a deadly weapon is shown, the law presumes malice, and the offense is murder, unless the defendant shall prove matter in defense or litigation. In indictments for larceny, the recent possession of stolen goods raises a presumption of guilt, and the same is true as to possession of intoxicating liquors, and there are other cases in which the requirement of proving the defendant guilty beyond a reasonable doubt is met by a presumption of guilt on proof of a given state of facts.
In addition to the statute on its face being a discrimination against the testimony of women, the woman in such cases is under the greatest possible disadvantage by reason of her shame and confusion, unaccustomed to proceedings in the courthouse, frightened and burdened with an offense which her associates and society will never condone, and she is burdened further by this requirement, not only that she must prove her deceiver guilty beyond a reasonable doubt, but by the further requirement that she must be "supported." *Page 737 
There was a time when Jews were disqualified as witnesses, or disparaged by additional testimony being required; till a later date, slaves were incompetent as witnesses; and still more recently, defendants in all criminal actions, and parties or those interested in civil actions were disqualified to testify. All these restrictions (with an exception in civil actions only as to transactions when the other party is dead) wiser legislation has swept away, and the credit to be given to the testimony of a witness is for the jury to determine. Minors are not disqualified or legally disparaged as witnesses, if found of sufficient intelligence. A defendant in a criminal action is always competent now to testify in his own behalf. The sole restriction as to criminal actions now remaining in our statutes is this disparagement and discrimination against the credit the jury shall give to the testimony of the woman in an indictment of this kind, whom the jury is forbidden to believe (even though in fact they may believe her), unless supported by other evidence.
Meanwhile, the other party to a transaction of this kind is not only competent, and the jury is left free to believe him without disparagement, but his testimony is enhanced and bulwarked by the usual rule in criminal actions, that the jury cannot find against him unless "beyond a reasonable doubt" they find his testimony to be untrue when, as in this case, he goes upon the witness stand.
But when even with that disparagement the testimony of the prosecuting witness has been held true beyond a reasonable doubt by two juries, and the judge has twice held the evidence sufficient and supported, an appellate court should be very slow to find the defendant "not guilty." On such motion, the evidence must be taken in the most favorable right for the state. S. v. Carlson, 171 N.C. 818.
No error.