WALKER and STACY, JJ., dissenting.
This was an indictment for the seduction of an innocent and virtuous woman, and from the verdict and judgment the defendant appealed.
This appeal presents, we think, but two exceptions that require consideration.
The court, after instructing the jury fully and correctly as to the nature of the offense with which the defendant was charged, and explaining to the jury the bill of indictment and instructed them as to the contentions of both the State and the defendant, and that before the defendant could be convicted the State must prove beyond a reasonable doubt that: (1) The prosecuting witness was seduced by the defendant; and (2) that at the time of her seduction she was then and before that time had been an innocent and virtuous woman, adding "that the State must also prove beyond a reasonable doubt that the seduction by the defendant was under a promise of marriage, *Page 868 
either express or implied by the acts and conduct of (811) the defendant." And said further, "And if the State had failed to satisfy the jury beyond a reasonable doubt of either of these essential facts, then the jury should acquit the defendant."
The court also told the jury that they could not convict the defendant upon the unsupported testimony of the prosecutrix, and further charged the jury: "And so, gentlemen of the jury, are you satisfied from the evidence that the defendant seduced the prosecutrix, and at the time she was an innocent and virtuous woman, and that the seduction was induced by apromise upon the part of the defendant to marry her, either expressed to her or implied by his acts, and his relationship to her? These facts gentlemen of the jury, are to be determined by you from the evidence, and if you are so satisfied, then you should find him guilty. If you are not so satisfied, gentlemen of the jury, then you should return the verdict of not guilty. If the prosecuting witness willingly surrendered her chastity, prompted by her own lustful passion, or by any other motive than that produced by a promise of marriage, then the court charges you that the defendant would not be guilty, and you should acquit him."
The court further charged the jury: "The burden of proof is upon the State of North Carolina to satisfy you beyond a reasonable doubt of the guilt of the defendant, and it must satisfy you of the criminal act, and it must satisfy you beyond a reasonable doubt that the prosecuting witness, Etta Beck, was seduced by the defendant; that at the time of her seduction she was an innocent and virtuous woman, and that the seduction was made under a promise of marriage, and unless the State has so satisfied you, you should return a verdict of not guilty. If the State has so satisfied you beyond a reasonable doubt of the three essential elements which, as I have explained to you, constitute the crime, than you should return a verdict of guilty."
The jury found that there was no reasonable doubt that the defendant was guilty. The charge was very full and complete and carefully expressed. The defendant excepts to the paragraphs above set out in quotation, because the court charged that the promise must be either "expressed to her or implied by his acts and his relationship to her." But it will be seen by reading all the charge bearing upon that point that the court throughout instructed the jury that they could not convict unless they were satisfied beyond a doubt of the three essential matters: (1) that the defendant seduced Etta Beck; (2) that she was and had been an innocent and virtuous woman; and that (3) the seduction was procured upon a promise by *Page 869 
the defendant to marry her, but that "if the prosecuting witness willingly surrendered her chastity, prompted by her own lustful passion, or for anyother motive than that produced by promise of marriage, then the court charges you that the defendant would be not guilty, and you should acquit him."
The evidence on the part of the State, if believed by the jury, was amply sufficient to satisfy them beyond a reasonable (812) doubt that the seduction was procured by such promise of marriage. The prosecuting witness testified unequivocally to the promise of marriage, and that it was the sole inducement which procured her seduction; that he had been going with her since she was 16 years old, and that they were engaged then; that in 1918 he joined the Navy, and while in service of the Government she received letters from him every week; that on his return he came to see her and renewed his promise of marriage, and that she told her mother that they were engaged, and her mother and sister both testified that the defendant told them that he was engaged to marry the prosecutrix. The court properly charged that they could not convict the defendant unless they believed the corroborating evidence.
The prosecuting witness also testified that when she discovered that she was to become a mother she told the defendant, who said that it would be all right; that he would marry her the next week; this promise he put off from time to time, and finally left in October and went to Mullins, S.C., but wrote her that he would meet her in the city of Wilmington at a time named, but did not do so; that while in South Carolina he wrote and asked her to destroy all his letters that she had received from him. It was also in evidence that while in Mullins he wrote to a witness in Wilmington, telling him to inform the prosecutrix that he was in Galveston, Texas, and not to let her know where he was. The evidence was very full and complete and its credibility was for the jury.
It will be seen that the court instructed the jury fully and completely that unless they were satisfied beyond a reasonable doubt that the sole inducement to the seduction was the promise of marriage, and "induced by no other motive," to acquit. The words "promise, expressed or implied by the acts and conduct of the defendant," which is the sole ground of this exception, would be harmless as there was evidence, corroborated by the mother and sister, of the promise of marriage, but if it were otherwise, the language of the judge, taken with the repeated instruction that they must be satisfied beyond a reasonable doubt that the seduction was procured "by the inducement of a promise of marriage and no other motive," could have no other meaning than that there was an expressed promise *Page 870 
or such acts and conduct on the part of the defendant that was unequivocal and would satisfy the jury beyond a reasonable doubt that such acts and conduct was the full equivalent of an express promise, and not a mere inference which the prosecuting witness might draw. "Acts speak louder than words," and the conduct of the defendant which might amount to an implied promise must have been such under the charge of the judge that it would convince the jury beyond a reasonable doubt that such promise was the sole inducement which procured the seduction. The jury were not (813) misled by the charge of the judge, which was explicit that there must have been a "promise," and that, whether expressed or implied by his acts, such promise was the sole inducement which caused the seduction.
In S. v. Ring, 142 N.C. 599, it was said by Walker, J.: "It is not necessary to a conviction under this law that the State should show the defendant directly and expressly promised the prosecutrix to marry her if she would submit to his embraces. It is quite sufficient if the jury from the evidence can fairly infer that the seduction was accomplished by reason of the promise, giving to the defendant the benefit of any reasonable doubt."
In S. v. Raynor, 145 N.C. 475, it is said, quoting S. v. Ring, supra:
"Such conduct is the legal equivalent of an express promise to marry if she would submit to his lecherous solicitation, provides the jury found, as they did, that it had the effect of alluring her from the path of virtue."
In S. v. Malonee, 154 N.C. 203, it is again said by Walker, J.: "We said in S. v. Ring, supra, that it is sufficient if the jury can fairly infer from the evidence that the seduction was accomplished by reason of the promise of marriage, giving to the defendant the benefit of any reasonable doubt, and that no set form of words is necessary to show the causal relation between the promise and the act of sexual intercourse."
In S. v. Fulcher, 176 N.C. 727, it is said: "As to the seduction by reason of the promise, the defendant admitted the engagement to other witnesses, and his assiduous attentions to the girl at the time when she alleged they committed the act, which with other circumstances already related, tended to support her testimony that he had promised to marry her, and she was thereby persuaded, after hesitation, to yield to his wishes. The woman could not easily be supported in any other way, for the man is not apt to admit his own guilt, though there are witnesses of it. S. v.Pace, 159 N.C. 462; S. v. Whitley, 141 N.C. 823; S. v. Kincaid,142 N.C. 657; S. v. Moody, 172 N.C. 967. It is said in Underhill on Cr. Evidence, sec. 388: "The conduct and *Page 871 
relations of the parties after, as well as before, the date of the alleged seduction may be shown, such evidence being relevant to prove that consent was obtained by promise and inducements, and of what they consisted.' This is cited with approval in S. v. Moody, 172 N.C. 971."
In S. v. Cooke, 176 N.C. 735, it was said: "There was unqualified evidence of the promise of marriage, though in S. v. Ring,142 N.C. 596, it was held that it was sufficient if this could be reasonably inferred from the evidence; there was evidence of the good character of the girl, which was held sufficient supporting testimony in S. v. Horton, 100 N.C. 448, and S. v. Malonee, 154 N.C. 202; there was evidence that she told her mother and father of the engagement and the conduct of the defendant, which was held sufficient as supporting testimony in S. v. Moody, 172 N.C. 967, and (814) numerous cases there cited by Walker, J., from this and other states. The testimony of the mother that the daughter told her of her engagement and of the conduct of the defendant was also held sufficient in S. v. Whitley, 141 N.C. 823, and S. v. Kincaid,142 N.C. 657."
In 24 R.C.L., p. 746, the law is thus summed up as to the promise of marriage: "In many States, though not in all, seduction is punishable as a crime only when accomplished under a promise of marriage. When such promise is a necessary element of the crime, it need not be shown that the defendant directly and expressly promised the prosecutrix to marry her if she would submit to his embraces, and it is sufficient if the jury, under the evidence, can fairly infer that the seduction was accomplished by reason of the promise, giving to the defendant the benefit of any reasonable doubt. But it must appear that the prosecutrix yielded her virtue in consequence of such promise, and not to gratify her curiosity or lustful passion."
The learned judge charged exactly in accord with the law as stated in the above extract, and in our own cases above quoted.
One of the counsel for the prosecution in closing his speech to the jury said: "The time has come when the decent people in North Carolina should stand up and defend the virtue and integrity of the fireside and home against the vicious assaults of human vultures and wolves." He was interrupted by one of the counsel for the defendant, who asked the court to order the counsel to desist. The court refused to stop counsel in his argument, who then said: "Regardless of what the counsel says, the Supreme Court has said, I propose to defend the womanhood of Brunswick County and the virtue of the *Page 872 
prosecutrix in this case." The court remarked that the counsel for the State was within his rights, and the defendant excepted.
We cannot see that the defendant was in anywise prejudiced by the statement of counsel for the prosecution. He was endeavoring to convince the jury that the defendant was guilty of the crime charged. In so arguing upon the evidence he was strictly within his rights, and in his generalization that those who committed such offenses were "human vultures and wolves," he certainly was not doing any prejudice to the defendant that would compare with his argument that upon the facts the jury should be satisfied beyond a reasonable doubt that the defendant had committed that offense. It was to decide that question that the jury had been impaneled and that this trial was had.
It is only when counsel goes beyond the evidence in the case, and makes charges against the defendant which are not a reasonable and just inference from the evidence, that the Court will grant a new trial if the presiding judge does not stop counsel and instruct (815) the jury to disregard what he said. S. v. Surles, 117 N.C. 724.
The prosecution could and did claim this case was an effort "on behalf of the decent people of the State to stand up and defend the virtue and integrity of the fireside," and the counsel was arguing that upon the evidence the defendant had been guilty of that offense. This is what the trial was to determine, and counsel had the right to argue that the State had done so, according to the evidence. It was not error, therefore, for the learned judge to hold that the counsel was within his rights in stating that this offense was a most heinous one, and that the public was interested in its being punished. This was a generalization, indeed a truism, to which every one must agree. The statute makes it a felony. This Court has said: "There is no crime more despicable than this. It is committed in secret, by lust and lying, by deception and the stronger taking advantage of the weaker." S. v. Cooke, 176 N.C. 735. So far from the remark being prejudicial, it put the jury on guard as to the importance of the offense, and was the statement of a legal and moral truth.
Upon consideration of all the exceptions, we find
No error.
WALKER and STACY, JJ., dissent. *Page 873